# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda D. Brown,                :
                                      :
             Petitioner        :
                                      :
           v.                   :     No. 2104 C.D. 2014
                                      :
Unemployment Compensation      :     Submitted: June 26, 2015
Board of Review,                  :
                                      :
           Respondent    :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: August 27, 2015**

Linda D. Brown (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) finding Claimant ineligible for UC benefits pursuant to Section 402(b) of the UC Law (Law).[1] On appeal, Claimant argues that the Board erred because: (1) substantial evidence does not support several of the Board's findings; and (2) Claimant had a necessitous and

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b). Section 402(b) provides that an employee is ineligible for compensation for any week "[i]n which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Id.

compelling reason to voluntarily resign.[2]  Because the record supports the Board's findings of fact and conclusion that Claimant voluntarily resigned without a necessitous and compelling reason to do so, we must affirm.

Claimant was last employed by YMCA – Roxborough (Employer) as a part-time membership representative on January 23, 2014.  (Board Decision, Finding of Fact (FOF) ¶ 1.)  On February 3, 2014, Claimant filed for UC benefits with the UC Service Center.  (Claimant Questionnaire, R. Item 2.)  In her application, Claimant stated, "I had no choice but to leave. . . . It was the hours."  (Employment Separation Questionnaire, R. Item 2.)  Specifically, Claimant asserted that the hours she was scheduled were not the limited hours she requested and were incompatible with her obligation to care for her elderly mother.  (Claimant Questionnaire, R. Item 2.)  Employer responded that Claimant voluntarily quit because "[s]he was dissatisfied with the schedule."  (Employer's Notice of Application, R. Item 4.)

Upon review, the UC Service Center determined that Claimant was not ineligible for UC benefits under Section 402(b) of the Law because "Claimant had

---

[2] Claimant also argues that the Board erred in finding that she quit rather than being constructively discharged by Employer.  The term "constructive discharge" is not generally used in this Court's UC jurisprudence outside of work stoppage cases when an employer hires workers to replace those on strike.  See, e.g., Northern Health Facilities v. Unemployment Compensation Board of Review, 663 A.2d 276, 278 (Pa. Cmwlth. 1995) (stating that constructive discharge, rather than a voluntary quit, occurs when an employer hires a permanent replacement worker for a striking employee).  However, the gravamen of Claimant's argument on this issue appears to be that Employer's scheduling created conflicts with Claimant's responsibility to care for her mother, leaving her no option but to quit.  This is essentially an argument that Claimant had necessitous and compelling cause to quit her employment, which we discuss *infra*.

work limitations and had a necessitous and compelling reason for quitting." (Notice of Determination, R. Item 5.) Employer appealed the UC Service Center's determination, and the UC Referee (Referee) held a hearing on April 29, 2014. Claimant appeared without counsel and testified on her own behalf, and Employer and its witness appeared and testified. In addition to her testimony, Claimant presented a copy of a letter setting forth the offer of employment from Employer, which indicated that she was to work weeknights, weekends, and that her schedule was subject to change.[3] (Hr'g Tr., April 29, 2014, at 7, R.R. at 8a; Ex. EE 1, R.R. at 39a.) The Referee determined that Claimant was ineligible for benefits pursuant to Section 402(b) of the Law because "Claimant [] failed to meet her burden of proof." (Referee Decision at 2.)

Claimant appealed the Referee's Decision to the Board, stating that the "schedule showed [Claimant] would be working hours prohibitive to [Claimant's] being a caregiver for [her] mother. . . . [Claimant] asked if the hours could be changed and [Employer] refused. . . . [Claimant] believe[d] [she] was constructively discharged." (Petition for Appeal, R. Item 11.) In response, the Board remanded this matter to the Referee for a hearing to establish additional testimony regarding the merits of the case. Specifically, the Board asked:

1. What exact efforts did the claimant make to preserve her employment?

---

[3] We note that the hearing transcript indicates that the Referee was going to mark this Employer Exhibit 1, but it was Claimant who presented it and the exhibit was, in fact, marked "EE 1." (Hr'g Tr., April 29, 2014, at 7, R.R. at 8a; Ex. EE 1, R.R. at 39a.)

2. Did the claimant make any efforts to find a caregiver for her mother prior to terminating her employment? If so, please detail the exact efforts made and when they were made.

(Remand Memo, R. Item 12.)

Claimant appeared with counsel at the remand hearing, but Employer did not attend. Regarding her efforts to preserve her employment by finding another caregiver, Claimant testified:

> R: . . . [D]id you make any efforts to find a caregiver for your mother prior to terminating your employment. . . ?
>
> C: I tried, but I had no one available. . . I had no one that could do it earlier than [5:00 p.m.], and I personally could not afford a health care provider. . . [I]t would be . . . prohibitive.

(Hr'g Tr., August 27, 2014, at 4-5, R.R. at 26a-27a.) Claimant also offered new testimony regarding Employer's request that she sign a second, different employment offer:

> C: [A]fter I signed the first document, I got home and I received a phone call that I needed to come back because there was two copies of the letter of offer. . . . [Employer] said there's no reason to read it, it's the same letter, [Employer] just need[s] you to sign. . . .
> ....
> CL: And you note that the second document . . . in the schedule it says, parenthesis, subject to change, end parenth [sic], you see that?
>
> C: Yes I do.
>
> CL: That wasn't in your first letter. . .
>
> C: No, it was not.

4

CL: And it was your understanding that schedule would be from 4:00 p.m. on and not subject to change, is that correct?

C: Exactly. And I didn't read it because I read the first one and she said to me it's the same letter.

(Hr'g Tr. at 6, R.R. at 28a.)  Based on the testimony from both hearings, the Board made the following credibility determinations:

> The Board resolves the conflicts in testimony in favor of the employer's witness and finds her testimony to be credible.
> ….
> The claimant did not establish with competent or credible evidence at the hearing or the remand hearing that she made any efforts to find a caregiver or that she could not afford one.
> ….
> [T]he claimant asserts on appeal and at the remand hearing that she was deceived into signing her employment offer.  The Board does not find the claimant's testimony to be credible.

(Board Decision at 2-3.)  Based on these credibility determinations, the Board made the following findings of fact:

1. The claimant was last employed as a part-time membership representative by [Employer] at a final rate of $9.00 per hour.  The claimant began employment on January 7, 2014, and her last day of work was January 23, 2014.

2. During the interview process, the claimant told the employer that she was the caregiver for her mother.

3. The claimant had told the employer that nights were better for her schedule and that she could not work on Sundays.

4. The claimant did not tell the employer there were exact hours she could not work.

5. The claimant had somebody watching her mother at night.

5

6. On December 16, 2013, the claimant signed an employment offer which stated that the schedule was "[w]eeknights and weekends" and "subject to change."

7. Starting on January 7, 2014, the claimant was receiving training three (3) days a week from 4:00 p.m. to 7:00 p.m.

8. On approximately January 22, 2014, the employer issued the first regular schedule that included the claimant.

9. The employer had the claimant scheduled 3:00 p.m. to 9:00 p.m. on Friday, January 31, 2014, and 9:00 a.m. to 2:00 p.m. on Saturday, February 1, 2014.

10. On January 28, 2014, the claimant called the employer and notified it that she could not work her scheduled times on Friday and Saturday.

11. The employer refused to change the claimant's schedule.

12. The claimant voluntarily quit her employment because the employer's schedule for her conflicted with her ability to be a caregiver for her mother.

(FOF ¶¶ 1-12.) Based on these findings, the Board determined that Claimant did not sustain her burden of demonstrating a necessitous and compelling reason for voluntarily resigning her employment as required under Section 402(b) of the Law. (Board Decision at 3.) Claimant now petitions this Court for review of the Board's Order.[4]

---

[4] Our review "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014).

In support of this appeal, Claimant argues that: (1) substantial evidence does not support some of the Board's findings; and (2) the scheduling conflicts created by Employer provided Claimant with necessitous and compelling reasons to resign because she could not afford another caregiver for her mother.[5]

Claimant first argues that certain of the Board's findings of fact are not supported by substantial evidence because they are based on the second offer letter, which misrepresents the true terms of Claimant's employment. Specifically, Claimant challenges the Board's finding that Claimant stated "nights were better for her schedule" when, in fact, "Claimant testified that she could only work nights." (FOF ¶ 3; Claimant's Br. at 2.) Claimant also takes issue with the finding that she "did not tell the employer there were exact hours she could not work" because Claimant argues that she testified otherwise. (FOF ¶ 4; Claimant's Br. at 3.) Claimant states that the Board also erred in concluding that she signed the second offer letter because Claimant argues that she knowingly signed only the first offer letter and was tricked into signing the second. (FOF ¶ 6; Claimant's Br. at 3.) Finally, Claimant argues the Board erred in finding that she voluntarily terminated her employment. (FOF ¶ 12.)

In considering Claimant's first argument, we must determine whether there is substantial evidence in the record that, when taken as a whole, supports the Board's challenged findings. Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383, 1387 (Pa. 1985). Substantial evidence is "such relevant

---

[5] Claimant raises sixteen issues in her brief, which we have summarized and re-ordered for organizational purposes. (Claimant's Br. at 3-6.)

7

evidence as a reasonable mind might accept as adequate to support a conclusion." Wise v. Unemployment Compensation Board of Review, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015.) If substantial evidence exists to support the Board's findings, this Court must accept the findings as conclusive, even if there is conflicting testimony or evidence. Middletown Township v. Unemployment Compensation Board of Review, 40 A.3d 217, 223 (Pa. Cmwlth. 2012); Walsh v. Unemployment Compensation Board of Review, 943 A.2d 363, 368 (Pa. Cmwlth. 2008).

The Board is the ultimate fact-finding body empowered to resolve conflicts of evidence and determine the credibility of witnesses. Metropolitan Edison Company v. Unemployment Compensation Board of Review, 606 A.2d 955, 957 (Pa. Cmwlth. 1992). A party's belief that a different version of events occurred does not create grounds for judicial reversal if substantial evidence supports the Board's findings. Tapco, Inc. v. Unemployment Compensation Board of Review, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). "Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review." Bell v. Unemployment Compensation Board of Review, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007).

In the instant case, Claimant is asking this Court to re-weigh the evidence and credit her testimony and evidence over Employer's. Claimant argues that the Board's findings she challenges are not supported by substantial evidence because they are based on Employer's second offer letter, which should not set forth the terms of employment since Employer tricked Claimant into signing it. However, the Board did not credit Claimant's testimony that she was deceived into signing

8

this letter, specifically stating that "the claimant asserts on appeal and at the remand hearing that she was deceived into signing her employment offer. The Board does not find the claimant's testimony to be credible." (Board Decision at 3.) We will not disturb the Board's findings based solely on Claimant's preferred version of the facts. Tapco, Inc., 650 A.2d at 1108-09.

Although Claimant argues that the Board capriciously disregarded her testimony that she was deceived into signing the document, which stated that her schedule would be for "weeknights and weekends" and "subject to change," we note that Claimant introduced a copy of that document into evidence at the initial Referee hearing. (Hr'g Tr., April 29, 2014, at 7, R.R. at 8a.) The Referee read it out loud, "Now Ms. Brown, this document says position, member services . . . part-time schedule subject to change weeknights and weekends. There's no limitation in terms of what hours you would work weeknights and weekends. You signed this document. Correct?" (Hr'g Tr. at 7, R.R. at 8a.) While Claimant did qualify that she said during the interview, "I can only work evenings," (Hr'g Tr. at 7, R.R. at 8a), she did not say at any time during the first hearing that she was deceived. Given these facts, we cannot find that the Board capriciously disregarded her later testimony at the second hearing by not crediting her subsequent version of the facts. Therefore, the Board's finding that Claimant signed an employment offer letter which stated that her schedule would be for "[w]eeknights and weekends" and "subject to change" is supported by the credited evidence. (FOF ¶ 6.)

The next Board findings Claimant challenges indicates that Claimant stated nights were "better for her schedule" and that Claimant never provided "exact

9

hours she could not work." (FOF ¶¶ 3-4.) Claimant is again relying on her own testimony that she explicitly told Employer she could only work nights. Here, the credited evidence established that the parties did not agree that Claimant's shifts would always begin at 4:00 p.m. Employer's witness testified as follows:

> R: Now when Ms. Brown accepted the position. . . did she tell you that she was unable to work during. . . daytime hours?
>
> EW: It was requested that nights were better.
>
> R: Does that mean that she could or could not work days?
>
> EW: There was never any distinct . . . given hour.
> ....
> R: And so it's your testimony that it was clear that [Claimant] would be asked to work weeknights and weekends that she had a preference not to work on Sunday, but there were no guarantees made to her about when she would be scheduled. Is that - - do I have that right?
>
> EW: Yes.

(Hr'g Tr. at 11-12, R.R. at 12a-13a.) This credited testimony constitutes substantial evidence to support the Board's findings challenged by Claimant.

Finally, in regard to Claimant's challenge to the Board's finding that Claimant voluntarily terminated her employment, Employer's witness, whom the Referee deemed credible, testified that Claimant *herself* separated her employment when Employer would not accommodate Claimant's request to change her work schedule so that she could care for her mother, saying:

> R: So it's your position and the Employer's position, that Ms. Brown resigned from her position. Correct?

10

EW: Yes.

(Hr'g Tr. at 16, R.R. at 17a.) Regarding the end of her employment, Claimant also stated:

> R: So what did you do to try to resolve the situation?
>
> C: Well I asked her, could she change my hours and she said, no, you knew it would be on the weekends. I'm like the weekend is not the problem, it's the hours that you're offering me, I can't do them. For $9 an hour, what I would have to pay somebody to stay with her, it would be prohibitive. . . . I couldn't do that.

(Hr'g Tr. at 9-10, R.R. at 10a-11a.) Essentially, Claimant is arguing that the Board should have believed her evidence and testimony. However, the Board did not, and we may not hold otherwise. Bell, 921 A.2d at 26 n.4. The above-quoted testimony constitutes substantial evidence that supports the Board's findings and conclusions drawn therefrom.

Next, Claimant argues that, even if she did voluntarily resign from her work, she had necessitous and compelling cause for doing so because, by scheduling her during the daytime, Employer unilaterally changed the terms of employment, entitling her to benefits under Section 402(b) of the Law. Claimant contends that Employer was aware that Claimant could not work before 4:00 p.m. because she cared for her sick mother, but scheduled her before that time anyway. Claimant further asserts that she had to quit because she could not find or afford another healthcare provider based on her $9.00/hour salary with Employer.

11

Section 402(b) of the Law states that an employee is ineligible for UC benefits for any week "[i]n which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b). An employee seeking UC benefits has the burden to prove that she had a necessitous and compelling reason for resigning. Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). It is well established that:

> [a]n employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment.

Id. "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." Warwick v. Unemployment Compensation Board of Review, 700 A.2d 594, 596 (Pa. Cmwlth. 1997).

This Court has held that "[a]n employer's unilateral imposition of a substantial change in the terms and conditions of employment provides a necessitous and compelling reason for an employee to leave work." McCarthy v. Unemployment Compensation Board of Review, 829 A.2d 1266, 1270 (Pa. Cmwlth. 2003) (citation omitted). Additionally, quitting to care for an ill parent may provide a claimant with necessitous and compelling cause under the UC Law. Draper v. Unemployment Compensation Board of Review, 718 A.2d 383, 385 (Pa. Cmwlth. 1998). "The question of whether quitting one's employment to care for

12

an ill parent constitutes cause of a necessitous and compelling nature must be decided by the specific facts of each individual case." Id. A claimant seeking benefits after terminating employment to care for an ill parent will not be said to have necessitous and compelling reasons for doing so unless she has explored alternatives less drastic than quitting, but ultimately had no real choice. Id.; Robinson v. Unemployment Compensation Board of Review, 532 A.2d 952, 953-54 (Pa. Cmwlth. 1987).

The credited evidence shows that Employer did not unilaterally alter the terms of Claimant's employment after acceptance because Employer provided a schedule that adhered to the terms of the employment offer letter. The credited testimony shows that Employer did its best to accommodate Claimant's scheduling request, but Claimant chose to terminate her employment when Employer could not change the hours given. Thus, Claimant has not carried her burden of establishing that Employer unilaterally imposed new, unsuitable working conditions that gave her a necessitous and compelling reason to quit.

Further, the Board provided Claimant with the opportunity to present additional, specific evidence to establish what efforts she took to find alternative care for her mother and to preserve her position before quitting. (Remand Hearing Order, R. Item 12.) However, at the remand hearing, Claimant only testified generally that she had no familial support and could not afford a healthcare provider for her mother based on her salary.

13

The facts in Draper and Robinson are very similar to those here. In Draper, the claimant, who quit to care for his ill mother in Virginia, was denied UC benefits because he did not explore less drastic alternatives, such as moving her to Pennsylvania or taking a work leave, before quitting. Draper, 718 A.2d at 385. Therefore, he could not demonstrate that his resignation was for necessitous and compelling reasons. Id. at 386. The claimant in Robinson was similarly denied UC benefits because, by failing to explore less drastic alternatives than quitting, the claimant showed neither a reasonable effort to preserve her employment nor that resigning to care for her ill father was her only option. Robinson, 532 A.2d at 953.

In the instant case, Claimant resigned after Employer refused to change her schedule and, like the claimants in Draper and Robinson, Claimant did not demonstrate "that [s]he explored [] options and found them to be fruitless." Draper, 718 A.2d at 386. When given the opportunity, Claimant offered no specific evidence or testimony that showed her unsuccessful efforts to find an affordable caregiver or trade shifts with a colleague. Thus, Claimant had the chance to establish necessitous and compelling reasons for her resignation, but did not do so pursuant to Section 402(b) of the Law.

Although we are empathetic to Claimant's situation, and commend her for her dedicated and diligent care of her mother, Employer's credited evidence constitutes substantial evidence that supports the Board's factual findings and conclusion that Claimant voluntarily resigned from her employment without

necessitous and compelling reasons for doing so.  Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Linda D. Brown,                          :
                                         :
                Petitioner               :
                                         :
        v.                               :        No. 2104 C.D. 2014
                                         :
Unemployment Compensation                :
Board of Review,                         :
                                         :
                Respondent               :

# **O R D E R**

**NOW**, August 27, 2015, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**