606 A.2d 955

**METROPOLITAN EDISON COMPANY, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 6, 1992.

Decided March 31, 1992.

650

Kenneth D. Kleinman, for appellant.

John E. Herzog, Asst. Counsel, for respondent.

Before COLINS and KELLEY, JJ., and LEDERER, Senior Judge.

COLINS, Judge.

Metropolitan Edison Company (employer) appeals an order of the Unemployment Compensation Board of Review (Board) which granted Gary W. Heintzelman (Heintzelman) unemployment compensation benefits. The Board reversed the decision of the referee, who denied Heintzelman benefits. The referee reasoned that Heintzelman committed willful misconduct when he failed to shave his beard as ordered by employer, in violation of Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1986, Second Ex. Sess., P.L. (1937), 2897 *as amended,* 43 P.S. § 802(e).

Heintzelman was employed as a utility worker assigned to crane operations for the Unit 2 reactor of the Three Mile Island nuclear generating station. The Board found, in finding of fact No. 3 that: "Due to changes in the number of people employed, the type of work needed to be performed, and an employer program called ALARA,[1] which is designed to equalize [and minimize exposure to] radiation among its employees, employer instructed Heintzelman to become Respirator Qualified in September, 1990." To become respirator qualified, an employee must pass both a medical examination, as well as a fit test, which requires an employee to have a clean shaven face. Facial hair decreases the protection afforded by a respirator, because it interferes with the way in which the respirator seals against the face. Therefore, according to Federal standards, facial hair is prohibited on some workers in certain nuclear facilities.

Even though employer informed Heintzelman that he would need to trim or shave his beard in order to become respirator qualified, Heintzelman refused to trim or shave. The Board found that Heintzelman believed that he passed a fit test in 1984 with a beard and, therefore, he did not need to trim or shave the beard for the 1990 test. Because of Heintzelman's refusal to shave his beard and become

---

**1.** ALARA refers to a program set up by employer to reduce the potential for employees' exposure to radiation. The acronym ALARA stands for "as low as reasonably achievable."

respirator qualified, he was fired for insubordination and willful misconduct. The referee agreed that Heintzelman committed willful misconduct and agreed with employer that he was ineligible for unemployment compensation benefits.

In reversing the referee, the Board found that employer had *not* established that Heintzelman's job specification required him to be respirator qualified. Furthermore, the Board found that alternative work, not requiring a respirator, may have been available to Heintzelman, thereby alleviating his obligation to trim his beard. Hence, the Board found that Heintzelman did not commit willful misconduct in failing to shave his beard and become respirator qualified.

Employer argues that the Board erred in concluding that Heintzelman was not guilty of willful misconduct. It asserts that Heintzelman violated its respirator qualification rules without good cause. According to employer Heintzelman refused to make a minor change in his appearance, even though he was warned that if he did not shave, he would be fired. Further, employer asserts that it does not have an obligation to find Heintzelman alternative employment just because he does not want to shave. Hence, employer raises two issues in this appeal: (1) whether the Board erred as a matter of law and made factual findings unsupported by substantial evidence by concluding that Heintzelman was not terminated for willful misconduct; and (2) whether the Board erred as a matter of law by concluding that employer was obliged to provide Heintzelman with alternative work which did not require the use of a respirator following his violation of the company rules requiring him to be respirator qualified.

Our scope of review in an unemployment compensation matter is limited to a determination of whether the Board's findings of fact are supported by substantial evidence, an error of law was committed or whether constitutional rights have been violated. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa. Common-

wealth Ct. 92, 525 A.2d 841 (1987). The Board is the ultimate fact-finding body empowered to resolve conflicts in evidence and determine credibility of witnesses. *Rosenberger v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 455, 376 A.2d 1018 (1977).

Willful misconduct is conduct which exhibits:

(1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employe, or (4) negligence which manifests culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168–69 (1973). Whether an employee's actions constitute willful misconduct is a question of law reviewable by this Court. *Id.*, 10 Pa.Commonwealth Ct. at 97, 309 A.2d at 169.

 In cases in which an employee has been accused of willful misconduct, the employer has the burden of proving the employee's willful misconduct. In doing so, the employer must prove the existence of a reasonable work rule and its violation. If the employer proves the existence of the rule, the reasonableness of the rule and the fact of its violation, the burden shifts to the accused employee to prove that he had good cause for violating the employer's rule. *Williams v. Unemployment Compensation Board of Review*, 141 Pa. Commonwealth Ct. 667, 596 A.2d 1191 (1991). When a claimant asserts that he or she had good cause for failing to comply with an employer's request, the Court must examine whether the action of the employee is justifiable or reasonable under the circumstances. The Court should look at the reason for the employee's noncompliance and evaluate its reasonableness under the circumstances. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

Typically, this Court requires extraordinary circumstances to justify an employee's refusal to comply with the reasonable request of his or her employer. In the case of *Hayes v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 49, 387 A.2d 186 (1978), the Court analyzed the kinds of circumstances in which the Supreme Court found good cause for an employee's refusal to comply with employer's work rule. The *Hayes* Court cited *Frumento*, in which the Supreme Court found that an election judge had good cause to disobey his employer's attendance rule, so that he would be able to carry out his judicial duties on election day. Additionally, the *Hayes* Court cited *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978), in which the Supreme Court found good cause when an employee refused to drive his employer's truck when, to do so, would have placed his life in danger. The *Hayes* Court concluded that, in both instances, extraordinary circumstances were involved which prevented the employees from following the reasonable directives of their respective employers.

■ We begin our analysis of the present case by examining whether employer proved that Heintzelman engaged in willful misconduct. First, we must evaluate whether employer established the existence of a reasonable work rule and its violation. The Board found that "employer ... failed to establish that its request for claimant to shave or trim his beard was essential to claimant's continued employment." Our review of the record indicates that this finding is not supported by substantial evidence. The evidence indicates that Heintzelman was required to shave his beard in order to comply with employer's policy regarding respiration protection to avoid exposure to radioactive airborne contaminants potentially released in an emergency or accident situation.

Employer's witness, Robert D. Holmes, a radiological engineer and supervisor of respiratory protection at Three Mile Island, testified:

EL: Why did you need a respirator policy?

EW1: In this particular instance, for several reasons. The Nuclear Regulatory Commission requires both a policy and written procedure be implemented for the enforcement of the Respiratory Protection Program, and the consensus standards require the same.

.    .    .    .    .

EL: All right. What is the hazard that is addressed by reason of these ... of this policy?

EW1: In particular in our work, the hazard relative to radiological controls and nuclear work and those airborne radioactivity situations that are encountered at a nuclear site such as Three Mile Island.

EL: Why do the employees need respirators?

EW1: Well, in order to protect you from those hazards, respirators are applied, and what's called a protection factor is taken for that specific type of respirator in order to allow you to perform needed work in airborne radioactivity environments and not receive as much or any exposure as if you didn't have the respirator on.

Additionally, on cross-examination, Mr. Holmes testified:

CL: Do you know what a crane operator does?

EW1: Yes.

CL: Does a crane operator need a respirator mask on to do his job?

EW1: There have been many occasions and work assignments at the Island when they have.

Moreover, in employer's Exhibit 2, an excerpt from GPU Nuclear Corporate Policy and Plan Manuals, TMI-1 and TMI-2 Division Policy for the Wearing of Respiratory Protective Equipment, states:

1.0 PURPOSE

The primary objective of the GPU Nuclear Corporation Policy on Respiratory Protection is to limit the inhalation of airborne contaminants. When engineering or process controls are not feasible or cannot be applied, the use of respiratory protective devices may be appropriate. This policy supplements the GPU Nuclear Corporation Policy

on Respiratory Protection, by defining the requirements necessary to ensure that personnel who may be required to utilize respiratory protective equipment can safely achieve the needed efficiency.

2.0  APPLICABILITY/SCOPE

This policy applies to:

2.1  Operations Personnel

2.2  Maintenance Personnel

2.3  Chemistry Personnel

2.4  Personnel assigned to the on-site emergency duty roster, fire brigade or emergency repair party

2.5  Select Engineering and Support Personnel as designated by Departmental Management

We note that the Board did not reject the testimony of Robert D. Holmes on credibility grounds. Rather, the Board reasoned that employer failed to establish that its request for claimant to shave was essential to claimant's continued employment, suggesting that claimant could have performed alternative work instead of shaving.

We disagree with the Board's conclusions that employer failed to establish that its request for Heintzelman to shave or trim his beard was essential to Heintzelman's continued employment, and we conclude that this finding is not supported by substantial evidence of record. Our examination of the record reveals that employer had an established rule and policy that its employees become respiratory qualified in order to protect the employees from exposure to radioactive contaminants which potentially could be released in an emergency or accident situation. Furthermore, the record reveals that Heintzelman violated employer's rule requiring respirator qualification by failing to shave his beard.

The next step in our analysis entails evaluating whether Heintzelman proved the existence of good cause for his failure to comply with employer's rule. In finding of fact No. 12, the Board found that "claimant believed that he had passed a fit test in 1984 with a beard and felt that was adequate and that he did not see the need to shave or trim

his beard presently." However, the Board also found that employer repeatedly instructed Heintzelman to shave his beard and to become respirator qualified after the 1984 fit test and that, in spite of these repeated requests, Heintzelman continued to refuse. We hold that, regardless of the fact that Heintzelman failed to shave his beard in 1984, he has not proven good cause for his failure to comply with the reasonable request of his employer in 1990. Hence, we conclude that Heintzelman committed willful misconduct in this matter.

■ The second part of our analysis involves evaluating whether the Board correctly concluded that employer had the burden of proving that alternative work was available to Heintzelman which did not require a respirator. Our research reveals no precedent requiring an employer to find alternative work for an employee when he or she commits willful misconduct by failing to comply with a reasonable request of the employer, unless the reason for noncompliance relates to the health requirements of the employee,[2] or the employee's sincerely held religious beliefs.[3] Hence, we hold that the Board erroneously held the employer to this burden of proof.

■ Third, the Board erred in requiring that employer prove that its ALARA policy was a government-mandated program. According to the Board's opinion, Heintzelman also did not have to shave his beard, because employer did not prove that employer's respirator qualification program was government mandated. An employer has the right to make decisions as to how he or she is going to run his or her business. In *Hayes*, 36 Pa. Commonwealth Ct. at 54, 387 A.2d at 188, this Court stated: "[T]he right of an employer to run his business according to his own beliefs and judgment may not be restricted unless compelling reasons to the contrary exist." In the present case, we find no

---

2. *See Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982).

3. *See Trans World Airlines Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

such compelling reasons in the record. Furthermore, we will not substitute our judgment or allow the Board to supercede the reasonable managerial prerogative of a licensed operator, when determining whether an employee working in a nuclear generating facility needs to be respirator qualified.

Our examination of the record and evidence in this matter indicates that, because Heintzelman failed to shave his beard and become respirator qualified, he committed a deliberate violation of employer's rules. Therefore, we conclude that he committed willful misconduct. Moreover, the record reveals that Heintzelman did not meet his burden of proving that he had good cause for his failure to shave. Further, we note that employer's request that Heintzelman shave his beard and become respirator qualified is a small burden compared to the dangerous consequences of exposure to radioactive airborne contaminants. Hence, we conclude that, because Heintzelman committed willful misconduct, he is not entitled to unemployment compensation benefits.

For the foregoing reasons, we reverse the Board.

## ORDER

AND NOW, this 31st day of March, 1992, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.