# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexia Azogu,                          :
                                       :
                    Petitioner         :
                                       :
          v.                           : No. 192 C.D. 2018
                                       : Submitted: October 19, 2018
Unemployment Compensation              :
Board of Review,                       :
                                       :
                    Respondent         :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: April 24, 2019


          Alexia Azogu (Claimant) petitions for review of the December 8, 2017 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's determination and held that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week in which her unemployment is based on her discharge from work because of willful misconduct connected to her work.

**(Footnote continued on next page…)**

Claimant worked full-time as a customer experience manager at Amerihealth (Employer) from November 4, 2013, until March 20, 2017. Finding of Fact (F.F.) No. 1. Employer's code of conduct requires employees to be honest and ethical and prohibits the unauthorized disclosure of confidential or proprietary information, which may include personnel data. F.F. No. 2. Claimant was aware of Employer's code of conduct. F.F. No. 3.

On or about December 12, 2016, Claimant attended a management meeting to discuss the performance evaluations of employees. F.F. No. 4. At this meeting, Claimant became aware that an employee (TB), was given a "needs improvement" performance rating. *Id*. TB was not one of the employees that Claimant supervised, but TB and Claimant were friends. F.F. No. 5.

The day after the meeting, Claimant met with Employer's senior human resources business partner, Susan Balle, to express her disagreement with TB's performance rating. F.F. No. 6. Ms. Balle directed Claimant to bring her concerns to TB's manager, Suzanne Ferry, and also warned Claimant that she was not permitted to share any confidential information with TB. F.F. Nos. 6-7.

---

**(continued…)**

While the Law does not define the term willful misconduct, our courts have defined it as: an act of wanton or willful disregard for the employer's interests; a deliberate violation of the employer's rules; disregard for standards of behavior which the employer can rightfully expect of an employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show the existence of a reasonable work rule and the claimant's violation of the rule. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Once the employer meets its burden, the burden shifts to the claimant to establish good cause for her conduct. *Metropolitan Edison Company v. Unemployment Compensation Board of Review*, 606 A.2d 955, 957 (Pa. Cmwlth. 1992).

In March 2017, TB, who was on medical leave from work at the time, contacted Employer's senior employee relations partner, Ronald Deabreu. F.F. No. 8. TB was in the process of filing a complaint against Ms. Ferry for discrimination. F.F. No. 8. During their conversation, TB told Mr. Deabreu that Claimant informed her that Ms. Ferry had inquired about the nature of her medical leave from work. F.F. No. 9.

During Employer's investigation of TB's complaint, Claimant admitted that she gave TB a "heads up" that Ms. Ferry had questioned her about TB's medical leave, but she denied having any knowledge of TB's performance rating. F.F. Nos. 10-11. On March 19, 2017, Claimant was again questioned and reiterated that she was unaware of TB's performance rating. F.F. No. 12. On March 20, 2017, Employer discharged Claimant for violating its code of conduct by sharing confidential information with TB and being untruthful during Employer's investigation. F.F. No. 13.

The local service center denied Claimant's application for unemployment benefits, concluding that Claimant's actions demonstrated a disregard of standards of behavior that Employer had the right to expect from its employees. Claimant appealed, arguing that her actions did not deviate from Employer's expected standard of conduct because Employer encouraged communication between management and employees.

A referee held a hearing on June 8, 2017. Mr. Deabreu testified that Claimant was discharged for misconduct, unacceptable behavior, and violating Employer's code of conduct. Notes of Testimony (N.T.), June 8, 2017, at 4. He added that disclosing confidential information and lying during an Employer investigation each constituted violations of Employer's code of conduct warranting

3

termination. N.T. at 8. Mr. Deabreu explained that Claimant's discussion with Ms. Ferry was deemed confidential because the nature of medical leave is personal, relevant only to an employee and the employee's doctor, and should not be discussed by others at a place of employment. N.T. at 5-6. Mr. Deabreu said that in the course of his investigation of TB's discrimination complaint, Ms. Balle informed him that Claimant was aware of TB's performance rating. N.T. at 7. Mr. Deabreu stated that he and Ms. Balle afforded Claimant an opportunity to rectify her false statement on March 19, 2017; however, Claimant again denied having knowledge of TB's performance rating. N.T. at 8.

Ms. Balle corroborated Mr. Deabreu's statements that Claimant was undoubtedly aware of TB's performance rating. N.T. at 12. She explained that during the annual management sessions, each manager establishes why a supervisor is given a particular rating and the other managers are invited to share their input. N.T. at 11. According to Ms. Balle, Claimant said nothing about TB's performance rating but asked to meet with Ms. Balle the next day. N.T. at 11-12. Ms. Balle stated that during their meeting, Claimant expressed disagreement with TB's performance rating and Ms. Balle advised her to speak with TB's manager. N.T. at 12-13. Ms. Balle testified that she also reminded Claimant not to discuss the matter with TB, and Claimant assured Ms. Balle that she would never reveal confidential information. N.T. at 13.

Claimant denied having met with Ms. Balle to discuss TB's performance rating. N.T. at 16. Claimant acknowledged that she told TB that Ms. Ferry had asked about TB's medical leave; however, she denied phoning TB at home to provide her with this information. N.T. at 14, 16. Instead, Claimant testified that the conversations in question actually occurred in August 2016, eight

4

or nine months prior to her discharge. N.T. at 14, 15. Claimant said that in August 2016, Ms. Ferry asked Claimant why TB was taking medical leave, to which Claimant responded that she was unsure. N.T. at 14. Claimant stated that the next day, TB was in her office discussing an unrelated issue, when Claimant suggested that TB talk with Ms. Ferry because Ms. Ferry had been inquiring about the reason for TB's medical leave.[2] N.T. at 14-15.

Claimant testified that in March 2017, Mr. Deabreu told her that TB was filing a discrimination complaint against Ms. Ferry, partially based on information Claimant had shared with TB. N.T. at 14. Claimant stated that when she was subsequently terminated, she was told it was because she had referred TB to Ms. Ferry, based on her confidential discussion with Ms. Ferry. N.T. at 15. Claimant testified that she did not believe that advising TB to meet with her supervisor involved sharing any confidential or privileged information.[3] *Id.*

---

[2] Claimant testified that she said, "Hey, not sure if you had already spoken with your manager about it, but you may want to give her a heads-up. She's not sure about why you're going out on leave[,]" but otherwise ended the conversation on this issue. N.T. at 14-15.

[3] Claimant acknowledged that Employer's code of conduct prohibited sharing confidential information with a supervisor, but she testified that Employer's written policy did not address conversations pertaining to an employee's medical leave. N.T. at 15, 16. The policy provides examples of confidential and proprietary information. It states:

> Examples of confidential and proprietary information may include: personnel data, member data, provider data, corporate policies and procedures, intellectual property such as trademarks, copyrights, and patents (including inventions), financial information, strategic plans and/or marketing strategies, vendor information, customer information, or other internal communications which may be considered part of an internal business decision.

Employer's Exhibit ES-1 at 23.

Claimant believed that she was discharged in retaliation for providing TB with information that TB used to file her discrimination complaint. *Id.*

In a June 13, 2017 decision, the referee determined that by revealing confidential information to an employee who was on medical leave, Claimant disregarded a standard of behavior that Employer had a right to expect from its employees. The referee concluded that Claimant's conduct rose to the level of willful misconduct under Section 402(e) of the Law because as a manager, Claimant should have been aware that she was privy to certain privileged information that could not be shared with other employees. The referee affirmed the local service center's decision to deny Claimant unemployment compensation benefits. Claimant appealed to the Board, arguing that the referee's findings were supported only by testimony from Employer's witnesses, which contained inaccuracies and omissions.

In its December 8, 2017 decision, the Board found that Claimant shared a confidential management conversation with TB and was untruthful about her knowledge of TB's performance rating and that each of these actions constituted violations of Employer's code of conduct. The Board did not find Claimant's testimony credible, particularly concerning Claimant's statements that her relevant conversations with Ms. Ferry and TB occurred eight or nine months before March 2017, in August 2016. The Board also rejected Claimant's testimony that she never met with Ms. Balle about TB's performance rating. The Board affirmed the referee's determination that Claimant failed to establish good cause for violating Employer's policies and held that Claimant was ineligible for benefits under Section 402(e) of the Law.

On appeal to this Court,[4] Claimant does not dispute the reasonableness of Employer's policies, but she maintains that her conduct did not violate them. First, Claimant asserts that she did not disclose any confidential information to TB. Claimant maintains that she only shared Ms. Ferry's *inquiry* about TB's medical leave and did not reveal any information concerning the *nature* of TB's medical leave.

The Board noted Mr. Deabreu's testimony that "the nature of TB's leave was personal information that was relevant only to TB and her medical practitioner. It was inappropriate for any individual . . . to be discussing the nature of TB's medical leave." Board June 13, 2017 Opinion at 3. However, the Board made no findings, and there is no evidence, that Claimant discussed the *reason* for TB's medical leave with either TB or Ms. Ferry. To the extent that the Board's decision was based on a discussion of the nature of TB's leave, it is not supported by the record.

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987). In unemployment compensation cases, the Board, as factfinder, is empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are binding and conclusive on appeal if the record, when examined as a whole, is supported by substantial evidence. *Halloran v. Unemployment Compensation Board of Review*, 188 A.3d 592, 597 (Pa. Cmwlth. 2018). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

Claimant's second argument is that she was not untruthful when she denied knowledge of TB's performance evaluation. Citing the high volume of employee evaluations she received at the December 12, 2016 meeting, Claimant maintains that she was not dishonest during Employer's investigation, but had merely forgotten her knowledge of TB's performance rating when asked. However, the Board did not credit Claimant's testimony, a credibility determination this Court is bound by on appeal. *Duquesne Light Company v. Unemployment Compensation Board of Review*, 648 A.2d 1318, 1320 (Pa. Cmwlth. 1994) (holding that "[w]here there is a conflict in testimony, credibility determinations and the resolution of evidentiary conflicts are within the [Board]'s discretion and are not subject to reevaluation on judicial review").

Claimant's statements that she was not aware of TB's performance evaluation violated Employer's policy, which expressly requires employees to be honest and ethical. Employer's Exhibit ES-1 at 4. Additionally, we have previously held that an employee's dishonesty can constitute a disregard of the standards of behavior that an employer can rightfully expect from its employees. *See, e.g.*, *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1173 (Pa. Cmwlth. 2007).

Finally, Claimant alleges that she was discharged in retaliation because TB relied on information Claimant provided to support her complaint of discrimination against Ms. Ferry. Because the Board's finding that Claimant was discharged for being untruthful during an investigation is supported by substantial evidence and Claimant failed to prove good cause for violating Employer's policy,

the Board properly concluded that Claimant is ineligible for unemployment compensation benefits under Section 402(e) of the Law.[5,6]

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

---

[5] A claimant who is discharged for multiple reasons is disqualified from receiving unemployment compensation benefits if even one of those reasons amounts to willful misconduct. *Glenn*, 928 A.2d at 1172.

[6] Claimant also suggests in her brief that the reasons given for her termination were a pretext for racial bias. However, Claimant has waived this argument by raising it for the first time on appeal. Pa. R.A.P. 1551(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexia Azogu,                          :
                                       :
                    Petitioner         :
                                       :
          v.                           : No. 192 C.D. 2018
                                       :
Unemployment Compensation              :
Board of Review,                       :
                                       :
                    Respondent :

O R D E R

AND NOW, this 24th day of April, 2019, the order of the Unemployment Compensation Board of Review, dated December 8, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge