# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Branden V. Thompson,              :
          Petitioner        :
                               :   No. 1413 C.D. 2018
          v.                 :
                               :   Submitted: May 3, 2019
Unemployment Compensation   :
Board of Review,             :
          Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: June 20, 2019

Branden V. Thompson (Claimant) petitions for review, *pro se*, of the August 30, 2018 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that found Claimant ineligible for unemployment compensation (UC) benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

## Facts and Procedural History

Claimant worked as a full-time Program Supervisor for Woods Services (Employer) from April 10, 2006, until April 26, 2018, when he was discharged for failing to immediately report suspected abuse of one of Employer's residents. (Referee Finding of Fact (F.F.) Nos. 1, 9.) Claimant applied for UC benefits and was found ineligible by the local service center on June 1, 2018. (Certified Record (C.R.) at Item No. 5.) Claimant appealed and a referee conducted a hearing on July 16, 2018, at which Claimant and two witnesses for Employer appeared and testified. (C.R. at Item No. 10.)

Employer presented the testimony of Sara Spady, an employment relations specialist for Employer, who testified that Claimant was discharged for "not properly reporting abuse." (C.R. at Item No. 10, p. 5.) Ms. Spady stated that, given the nature of Employer's work, all employees are mandated reporters of abuse and, consequently, they receive training that instructs them to "report the abuse immediately" any time abuse is suspected or reported to them. *Id.* Ms. Spady testified that Claimant also received an employee handbook detailing how to report abuse. Employer submitted a copy of a receipt with Claimant's signature acknowledging receipt of the handbook. (C.R. at Item No. 3, Service Center Exhibit 7.) Employer also entered into the record a portion of the employee handbook, entitled "Abuse," which stated, in pertinent part, "Any employee who commits, witnesses, or has knowledge of any act which may constitute an abusive/neglectful/mistreatment act, **must report it immediately** to ChildLine or Adult Protective Services [] and then inform the Program Supervisors or designee that a report has been filed." (C.R. at Item No. 3, Service Center Exhibit 9) (emphasis added).

Employer next presented the testimony of Kathleen Hunt, Employer's Residential Director. Ms. Hunt testified Claimant received training on reporting abuse in July 2017, for which Claimant received a certificate that Employer entered into the record. Ms. Hunt noted that a similar incident involving Claimant occurred on March 26, 2018, wherein Claimant had delayed reporting suspected abuse to her, after which Ms. Hunt sent Claimant an email stating that, in the future, he should notify her of such incidents by phone. Employer submitted a copy of the email into the record, wherein Ms. Hunt stated, "[P]lease in the future call me with something like this not an email," to which Claimant responded, "Ok, will do." (C.R. at Item No. 3, Service Center Exhibits 8, 11, p. 2; C.R. at Item No. 10, p. 6.)

Ms. Hunt testified that Claimant was terminated due to the delay in reporting abuse on April 26, 2018. Ms. Hunt stated that Employer is required to report abuse to the state in a timely manner and, thus, immediate reporting by employees to their superiors, no matter the time of day, is necessary. Ms. Hunt explained that, as the Residential Director, she was on-call 24 hours a day in order for employees to do so. With regard to the day of the incident, Ms. Hunt testified that Claimant sent her a text message regarding the abuse at 11:33 a.m., but he admitted to her that it had been reported to him at 7:15 a.m. that morning. Due to this delay in reporting, Ms. Hunt stated that physical evidence of the suspected abuse was lost because the body check, which is required to be performed on the resident immediately after a report of abuse, was not done until hours later. (C.R. at Item No. 10, pp. 7-8, 14-15.)

Claimant testified at the hearing on his own behalf. As to the day of the incident, Claimant acknowledged that at 7:15 a.m. he went to a resident's room and

another employee showed him that the resident's wrists were tied in front of him with a bed sheet.[2] Claimant stated that, after he took a picture of the resident's tied wrists, he instructed the other employee to untie him and remove the bed sheet, and Claimant checked him for bruising and redness. Claimant testified that he then told the employee to write up the incident and to take the resident to a nurse for a body check. Claimant stated that because the resident seemed happy and safe when he encountered him, he went on to attend to other patients and perform various tasks that needed attention because the staff was short-handed that morning. Namely, Claimant testified that he had to attend to another resident to calm him down and afterward took phone calls and fed breakfast to another resident that required help with eating. (C.R. at Item No. 10, pp. 9-11.)

Claimant testified that around 10:00 a.m. he had a conversation with his manager, who, being aware of the prior incident where Claimant emailed Ms. Hunt about abuse, advised Claimant to wait until Ms. Hunt came into the office at 11:00 a.m. to report the abuse. Claimant testified that shortly after 11:00 a.m. he called Ms. Hunt and informed her of the suspected abuse and sent the photo he had taken earlier. (C.R. at Item No. 10, pp. 9-12.)

Claimant stated that when Ms. Hunt asked for the body check information, Claimant discovered that, despite his instructions, it had not been completed. Claimant stated that the body check was ultimately performed at around 11:00 a.m. Claimant noted that Ms. Hunt appeared upset by the delay in the body

---

[2] Claimant explained that this particular resident sometimes engages in self-injurious behavior wherein "he's punching himself in the ear" and does so "pretty hard to the point where the ear opens and it bleeds." (C.R. at Item No. 10, p. 10.) Claimant surmised that the night staff had likely tied the resident's wrists in order to get him to stop hurting himself "because [] they didn't feel like bothering trying [sic] to get him to calm down the proper way." *Id.*

4

check, and testified that around 4:15 or 4:30 p.m. he received word that he had been suspended for waiting over four hours to report the suspected abuse.

Claimant acknowledged that he received the handbook and was aware of the policy; however, he argued that he did not willfully violate the policy. Claimant explained that his first objective was the safety of the residents and, because he saw that the victim of abuse was safe for the time being, he made a "judgment call" to deal with other issues involving other residents that needed to be dealt with promptly. *Id.* at pp. 12-13. Claimant maintained that he intended to report the suspected abuse "as soon as [he] got everything calmed down." *Id.* at p. 13.

By decision dated July 19, 2018, the referee found Claimant ineligible for UC benefits. The referee found the following:

1. [Claimant] was last employed as a full-time Program Supervisor with Woods Services from April 10, 2006[,] until April 26, 2018, his last day of work, at a final rate of $17.83 per hour.

2. [Employer] is obligated to make an immediate report of suspected child abuse to Childline or Adult Protective Services.

3. As a practical matter, the Residential Director has the responsibility to make such a report.

4. According to [Employer's] policy, [Claimant] was required to immediately report suspected abuse to the Residential Director by telephone.

5. [Claimant] was aware of the [Employer's] policy and procedure.

6. On April 26, 2018, [Claimant] discovered evidence of possible child abuse at approximately 7:15 AM.

5

7.  [Claimant] did not report the incident to the Residential Director until 11:30 AM.

8.  During a prior incident, the Residential Director advised [Claimant] to contact her immediately by telephone upon learning of suspected child abuse.

9.  On May 8, 2018, after completing an investigation, [Employer] terminated [Claimant's] services for failure to immediately report suspected abuse on April 26, 2018.

(F.F. Nos. 1-9.)

Based on these findings, the referee determined that Employer had successfully shown that Claimant was required to immediately report abuse or suspected abuse with a call to Employer's Residential Director. The referee noted that Claimant failed to do so, despite being warned after a prior incident that communication involving abuse or suspected abuse was to be immediate and transmitted by phone. This disregard of the standard of behavior that Employer had a right to expect of Claimant, the referee concluded, constituted willful misconduct.

Claimant appealed to the Board, asserting that "[t]he referee's decision to deny benefits [was] based on inaccurate information." (C.R. at Item No. 12.) However, the Board affirmed the decision of the referee, finding the determination proper under the Law. *Id.*

Claimant then sought reconsideration of the Board's order, citing specific "inaccurate" findings of fact by the referee. (C.R. at Item No. 14.) Claimant argued that findings of fact numbers 4 and 8 were unsupported by the record, as in his view, there was no formal requirement to report an incident of abuse by telephone, nor was there a settled definition of the word "immediately." *Id.* The request for reconsideration by the Board was denied. (C.R. at Item No. 16.)

6

Claimant now petitions for review of the Board's order,[3] again arguing that findings of fact numbers 4 and 8 lack substantial evidence and, additionally, that his decision to report the abuse when he did was in accordance with Employer's protocol.

## Discussion

Section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to willful misconduct connected to his work. 43 P.S. §802(e). Willful misconduct is defined as (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003). Whether a claimant's conduct constitutes willful misconduct is a question of law fully reviewable by this Court on appeal. *Temple University of the Commonwealth System of Higher Education v. Unemployment Compensation Board of Review*, 772 A.2d 416, 418 n.1 (Pa. 2001).

In UC cases, the Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913

---

[3] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

7

A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.*, 913 A.2d at 335. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

Claimant contests finding of fact number 4, wherein the Board found that, pursuant to Employer's policy, Claimant "was required to immediately report suspected abuse to the Residential Director by telephone." (F.F. No. 4.) More specifically, Claimant alleges that Employer's policy does not require reporting to be done exclusively by phone, nor does it state the timeframe in which a report must be made.

Claimant similarly challenges finding of fact number 8, wherein the Board found that, "[d]uring a prior incident, the Residential Director advised [] [C]laimant to contact her immediately by telephone upon learning of suspected child abuse." (F.F. No. 8.) Claimant argues that this finding mischaracterizes the evidence because, in her email, Ms. Hunt was merely indicating that Claimant should call to report abuse instead of email. Claimant contends that "nothing in [the] email read like a warning," but instead "more like a[n indication of] personal preference" to

8

receive such reports by phone. (Claimant's brief at 11.) Claimant also argues that he was never advised to contact Ms. Hunt "immediately," noting that her email said nothing about the timeframe in which abuse must be reported.

We disagree with Claimant that these findings lack substantial evidence. At the referee's hearing, Ms. Hunt testified that Claimant had been trained on reporting procedures in July of 2017. She also testified that she had instructed Claimant that all future reports of abuse were to be reported by phone. Her email specifically instructed Claimant, "[P]lease in the future call me with something like this not an email," to which Claimant had responded "Ok, will do." (C.R. at Item No. 3, Service Center Exhibits 11, p. 2.) Further, Ms. Hunt stated in her testimony that "[w]hen you are told something like [the abuse reported to Claimant] at 7:15 in the morning, you need to call . . . ." (C.R. at Item No. 10, p. 7.) Ms. Hunt's testimony regarding Claimant's training and her instruction to Claimant in the email, as well as Claimant's emailed response, constitute substantial evidence for the finding that Claimant was to report abuse by telephone.

With regard to the immediacy of reporting, Ms. Spady testified during the hearing that employees receive training, which instructs them to "report the abuse **immediately**" any time abuse is suspected or reported to them. (C.R. at Item No. 10, p. 5) (emphasis added). Further, Employer submitted a portion of its handbook, which stated that "[a]ny employee who commits, witnesses, or has knowledge of any act, which may constitute an abusive/neglectful/mistreatment act, must report it **immediately** . . . ." (C.R. at No. Item 3) (emphasis added). Claimant signed this handbook, indicating that he had received a copy and that it was his responsibility to review its contents. Claimant's acknowledged receipt of the handbook, together with Ms. Spady's testimony and the instruction in the handbook regarding abuse reporting,

9

constitute substantial evidence for the finding that Claimant was required to immediately report abuse.

Although Claimant argues that the word "immediately" is not defined by Employer's handbook, our Supreme Court has long held, "The word 'immediate' . . . must be construed to mean within a reasonable time thereafter, under all the facts and circumstances of the case; and what is a reasonable time must be decided by the [fact finder], unless, as before observed, the delay has been so great that the court may rule it as a question of law." *People's Mutual Accident Association v. Smith*, 17 A. 605, 606 (Pa. 1889). Here, the Board, as fact finder, determined that four hours after the abuse was reported to Claimant was not sufficiently "immediate" and thus constituted a violation of Employer's policy. Discerning no error or abuse of discretion, we agree.

In his second argument, Claimant essentially argues that good cause existed to excuse his actions.[4] Claimant cites the chaotic conditions at Employer's facilities that morning, including being short staffed, as the reason for the four-hour delay in reporting the suspected abuse to Ms. Hunt. Claimant alleges that caring for other patients and "putting out other fires" were reasonable justifications for his delay in reporting. *Id.* at 8. In this way, Claimant argues, he did not willfully intend to violate the rules of Employer, but rather used his judgment to prioritize his responsibilities of that morning while still, in his mind, following protocol. *Id.*

If an employer alleges misconduct because of a claimant's violation of a work rule, the employer must prove the existence of the rule and its violation, and the burden then shifts to the claimant to show good cause for his actions. *McKeesport*

---

[4] Although Claimant presents this argument in the "Statement of the Case" section of his brief, the Board did not move to quash the appeal. To the contrary, the Board separately addressed the issue in its responsive brief. Hence, we address the issue above.

*Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "[W]here the claimant has good cause for violating the rule, it is not willful misconduct because it cannot properly be charged as a willful disregard of the employer's interest or rules or of the standard of conduct which the employer has a right to expect." *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1209 (Pa. Cmwlth. 2006). "Whether a claimant has good cause to violate an employer's rule or policy is a question of law subject to this [C]ourt's review and should be viewed in light of all of the attendant circumstances." *Id.*

Here, we disagree that Claimant had sufficient good cause to justify his violation of Employer's work rule. In *Sipps v. Unemployment Compensation Board of Review*, 181 A.3d 479 (Pa. Cmwlth. 2018), a claimant who worked as a security officer was terminated for failing to immediately report his arrest to his employer in accordance with the employer's policy. The claimant applied for UC benefits, but was found ineligible due to his termination for willful misconduct. *Id.* at 481. Before this Court, the claimant did not dispute the existence of the employer's policy, nor that he was aware of it. *Id.* at 482. Instead, he argued that he had good cause for violating the policy because he did not have access to a phone while incarcerated and, once released, needed to prioritize "what he had to accomplish to comply with the judge's orders, such as filing paperwork and finding a lawyer," rather than take what he acknowledged would only have required five minutes to notify his employer. *Id.* at 483. The claimant contended that, under the circumstances, notifying his employer within 24-hours was reasonable. *Id.*

This Court, however, disagreed and affirmed the Board's holding that the claimant lacked sufficient good cause to justify his violation of the policy. In doing so, we observed that there was substantial evidence supporting the Board's finding that the employer "had a reasonable policy of which [the c]laimant was

aware, yet [he] consciously chose not to take a few minutes to comply with the policy until nearly 24 hours after his release." *Id.* at 485 (emphasis deleted).

Similarly, here, there is substantial evidence that Employer had a reasonable policy regarding immediate reporting of abuse, about which Claimant was aware, given his signature acknowledging receipt of the employee handbook. Additionally, Claimant acknowledged that although the suspected abuse was reported to him at 7:15 a.m., he did not report it to Ms. Hunt at that time, despite the fact that she had recently addressed the abuse reporting policy with Claimant via email. Instead, Claimant proceeded to undertake several other tasks, including feeding breakfast to another resident and taking phone calls, rather than take the few minutes necessary to make the mandatory and time-sensitive call. Like the claimant in *Sipps*, Claimant could have called Ms. Hunt much earlier in the day without sacrificing his other responsibilities; however, Claimant chose to wait a full four hours from the time the abuse was first brought to his attention before reporting it. Therefore, we agree with the Board that, under the circumstances, Claimant did not have good cause to violate Employer's work rule.

Accordingly, because there is substantial evidence in the record supporting the findings that Claimant challenges and because we discern no error in the Board's determination that Claimant was terminated for willful misconduct for failing to immediately report suspected abuse of a resident by phone, the Board's order denying Claimant UC benefits is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Branden V. Thompson,            :
          Petitioner     :
                      :   No.  1413 C.D. 2018
          v.            :
                      :
Unemployment Compensation  :
Board of Review,           :
          Respondent   :

## ***ORDER***

AND NOW, this 20th day of June, 2019, the order of the Unemployment Compensation Board of Review, dated August 30, 2018, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Branden V. Thompson,         :
                                 :
              Petitioner   :
                                 :
           v.                : No. 1413 C.D. 2018
                                 : Submitted: May 3, 2019
Unemployment Compensation   :
Board of Review,           :
                                 :
             Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY JUDGE WOJCIK                             FILED: June 20, 2019

I respectfully dissent.

Branden V. Thompson (Claimant) is not ineligible for benefits under

Section 402(e) of the Unemployment Compensation Law (Law)[1] because I do not

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his unemployment is based on his discharge from work because of willful misconduct connected to his work. While the Law does not define the term willful misconduct, our courts have defined it as: an act of wanton or willful disregard for the employer's interests; a deliberate violation of the employer's rules; disregard for standards of behavior which the employer can rightfully expect of an employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014). Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show the existence of a reasonable work rule and the claimant's violation of the rule. *Williams v.*
**(Footnote continued on next page…)**

believe that he willfully violated Woods Services' (Employer) work rule. According to Employer's employee relations specialist, Sarah Spady, Employer previously warned Claimant about not properly reporting abuse. Certified Record (C.R.), Item No. 10, Referee's Hearing, Notes of Testimony (N.T.), 7/16/2018, at 6. Spady testified Claimant had received training and was instructed by Employer's director, Kathleen Hunt (Hunt), "on the *proper way* to report abuse." *Id.* (emphasis added). *Id.* Hunt testified that "[t]here was an incident on March 26th where it [sic] was a delay in reporting. We exchanged emails and I said that you need to notify me immediately by phone, and he responded with okay." *Id.* According to the email, Claimant reported the March 26 incident to Hunt via email. In response, Hunt instructed, "*in the future call me with something like this not an email*," to which he responded, "Ok, will do." C.R., Item No. 3, Employer's Separation Information (emphasis added). There is no mention of immediacy in the email. *See id.* Although the employee handbook does state that an employee must "[i]mmediately report," it does not define "immediately," and the prior warning focused on the *manner* in which Claimant is to make the report – a phone call to the director, not an email. C.R., Item No. 3, Employer's Separation Information. This time, Claimant followed the director's instructions and reported the abuse in the manner prescribed by telephoning her. As for the immediacy, Claimant notified Hunt of the incident ten minutes after Hunt arrived at work on the very morning the incident occurred. The passage of four hours from the time

_____

**(continued…)**

*Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). Once the employer meets its burden, the burden shifts to the claimant to establish good cause for his conduct. *Metropolitan Edison Company v. Unemployment Compensation Board of Review*, 606 A.2d 955, 957 (Pa. Cmwlth. 1992).

of the incident to placing the call is not under these circumstances an unreasonable delay.

Even if the interval constituted a violation of Employer's work rule, Claimant established good cause for his actions. Claimant reported that he "did not call [Hunt] at home because [he] had other things going on at the time." C.R., Item No. 4, Record of Oral Interview. Claimant testified that the facility was short staffed that morning. N.T. at 11. Claimant described the morning as "really chaotic." *Id.* Claimant made a judgment call and prioritized his other work responsibilities before making the call. *Id.* at 11-12. After ensuring that the resident of the suspected abuse was safe (his first priority), Claimant testified that he took "care of the *other stuff going wrong* which was happening right at that time. And I fully intended to report this as soon as I got everything else calmed down." N.T. at 12-13 (emphasis added). Claimant testified that he was trying to take care of the facility's residents, who needed to be calmed down, washed, dressed, medicated, and/or fed,[2] as well as other pressing business matters. N.T. at 11. Unlike the claimant in *Sipps v. Unemployment Compensation Board of Review*, 181 A.3d 479 (Pa. Cmwlth. 2018), who prioritized his own self-interests (securing a lawyer and filing paperwork) over the employer's interests before reporting his arrest some 24 hours later, Claimant here prioritized Employer's other interests. N.T. at 11.

Under the attendant circumstances, Claimant's actions can hardly be classified as a willful disregard of the Employer's interests or rules. Furthermore, I

---

[2] Employer's handbook defines abuse/neglect/mistreatment as including "[a]ny act or omission of an act that deprives an individual of his/her rights or human dignity." C.R., Item No. 3, Employer's Separation Information.

believe that Claimant demonstrated good cause for his actions, which negates a charge of willful misconduct. For these reasons, I would reverse the Unemployment Compensation Board of Review's determination of ineligibility under Section 402(e) of the Law.

 

_____
MICHAEL H. WOJCIK, Judge
