633 A.2d 1261

**Stephen B. ANDREWS, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 1, 1993.

Decided Nov. 5, 1993.

456

Richard A. Katz, for petitioner.

Judith M. Gilroy, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Stephen B. Andrews appeals from an order of the Unemployment Compensation Board of Review (UCBR) that denied benefits to Andrews pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e), which provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work. We affirm.

Andrews worked as a cashier for the Boscov Department Store (Employer). On February 25, 1992, Andrews filed charges against Employer with the Human Relations Commission. In April, the Human Relations Commission held a fact-finding session wherein Employer's personnel director testified. Two days later she suffered a miscarriage. Later Andrews discussed the personnel director's miscarriage with co-workers implying he felt responsible for the miscarriage and he did not regret it. Andrews also told the co-workers that the personnel director would again lose the baby she was now carrying because of further hearings before the Human Relations Commission. Employer discharged Andrews for making threats about the health and welfare of another employee. The Office of Employment Security (OES) denied Andrews benefits as did the referee. On appeal to the UCBR, it found that Andrews' actions rose to the level of willful misconduct.

On appeal,[1] Andrews argues that the UCBR's findings of fact are not supported by substantial evidence and thus, do not support the conclusion that his action rose to the level of willful misconduct.

Whether an employee's conduct rises to the level of willful misconduct is a question of law subject to our review. *Luzerne v. Unemployment Compensation Board of Review,*

---

1. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

148 Pa.Commonwealth Ct. 473, 611 A.2d 1335 (1992). Willful misconduct is:

> (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional or substantial disregard for the employer's interests or the employee's duties and obligations.

*Metropolitan Edison v. Unemployment Compensation Board of Review*, 146 Pa.Commonwealth Ct. 648, 653, 606 A.2d 955, 957 (1992) (citing *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa.Commonwealth Ct. 90, 309 A.2d 165 (1973)).

■ Three of Claimant's co-workers testified that Claimant had discussed the personnel director's miscarriage and subsequent second pregnancy with them in relation to his charges against Employer before the Human Relations Commission. One co-worker, Sarah Postance, testified that Andrews stated that he was "not sorry that [the miscarriage] had happened." (Notes of Testimony of December 3, 1992 hearing at 11). Ms. Postance also testified that Andrews wanted to make sure that something would happen "before the end of the year, that something was going to cause [the personnel manager] pain to get even with her." (N.T. at 12). Another co-worker, Patricia Stoger, testified that Andrews had told her that "he caused [the personnel manager's] miscarriage, wasn't sorry it happened, and that he hoped that—he didn't think she'd be able to hold this baby after he intimidated her this time." (N.T. at 14). A third co-worker, Angela Davis, testified that Andrews told her that he was going to cause a second miscarriage. (N.T. at 17).

Andrews asserts that there is no direct evidence in the record to support the conclusion that there was any specific threat of harm to the personnel director or her unborn child. In the alternative, Andrews asserts that even if such remarks were made, they are *de minimis* at best. Andrews relies on *Blount v. Unemployment Compensation Board of Review*, 77

Pa.Commonwealth Ct. 627, 466 A.2d 771 (1983) to support his position.

In *Blount*, while in the company cafeteria talking and joking with another employee, the claimant made a bomb threat with respect to her superiors. As a result of this remark, the employer discharged her. The employer had been the victim of several bomb threats related to labor unrest and which claimant was aware of at the time of her remarks. We, however, found that while the claimant had made an off-hand remark, undeniably in bad taste, it did not rise to a level of an actual threat to disqualify her from receiving benefits. Further, we focused on the fact that there was no indication that the claimant was capable of carrying out such a bomb threat. Andrews argues that *Blount* controls because no evidence exists as to any connection between his conduct and the personnel director's first miscarriage or potential complications with her second. Andrews further argues there is no evidence that the Human Relations Commission would schedule a second hearing to coincide with dates more suitable to affect the alleged harm.

Even if Andrews does not have control over the docket of the Human Relations Commission, this fact does not take away from his belief that he did cause and could cause the harm he spoke about to other co-workers.

Andrews also cites *Lower Gwynedd Township v. Unemployment Compensation Board of Review*, 44 Pa.Commonwealth Ct. 646, 404 A.2d 770 (1979), in which a police officer's threat to refuse to provide backup for his fellow officers was found to constitute willful misconduct even though it was not a threat of direct or immediate harm. While we held the police officer to a higher standard of conduct than members of most professions, the actual basis of *Lower Gwynedd* was that the disruption and discord caused by the claimant's comment were in disregard of the employer's interest.

It is well established that threats of harm toward a supervisor or co-worker constitute conduct below the standards of behavior which an employer has the right to expect

from an employee. *Unemployment Compensation Board of Review v. Lee*, 20 Pa.Commonwealth Ct. 154, 340 A.2d 586 (1975). It does not matter that the threat was communicated to a third party rather than the person to whom it was intended. *Watson v. Unemployment Compensation Board of Review*, 68 Pa.Commonwealth Ct. 203, 448 A.2d 716 (1982). Such conduct creates discord and interrupts the employer's operation. *Gallagher v. Unemployment Compensation Board of Review*, 42 Pa.Commonwealth Ct. 344, 400 A.2d 926 (1979).

Andrews' statements here were so offensive that we hold they were inimical to the Employer's best interest, as well as being a complete disregard of the standards of behavior which Employer had a right to expect from Andrews. The UCBR's findings are supported by substantial evidence and, therefore, we hold that the UCBR committed no error of law in concluding that Claimant's actions rose to the level of willful misconduct.

Accordingly, we affirm.

### ORDER

AND NOW, this 5th day of November, 1993, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., concurs in result only.