**OFFSET PAPERBACK, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 1999.

Decided March 17, 1999.

Reargument Denied April 22, 1999.

---

**1126**

Matthew Lee Wiener, Philadelphia, for petitioner.

John B. Dougherty, Harrisburg, for intervenor, Larry Roberts, Sr.

Clifford F. Blaze, Deputy Cheif Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, and FLAHERTY, J., and NARICK, Senior Judge.

COLINS, President Judge.

Offset Paperback (Employer) appeals from the order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision finding Larry Roberts (Claimant) ineligible for benefits because of willful misconduct,[1] pursuant to Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[2]

The Board's Findings of Fact set forth the following events that resulted in Claimant's discharge. From October 20, 1997, until May 29, 1998, Claimant was employed by Offset Paperback as a plant-wide assistant at a final rate of $6.54 an hour. Claimant's union had a bargaining agreement with Employer that listed several violations of Employer's policy that could result in immediate discharge. One such violation is an absence of three working days without properly notifying management, which absence Employer deems a voluntary quit under its policy. The record indicates that Claimant was aware or should have been aware of Employer's policies regarding absences.

On May 29, 1998, Claimant's last day of work, Claimant advised his supervisor that he was having personal health problems and needed help. Claimant was provided the name of a program from the employee assistance program and also the number of the insurance company. On June 1, 1998, Claimant called his supervisor to report that he would not be in and that he had a doctor's appointment at 4:00 p.m. about his health problems. On June 2, 1998, Claimant notified his supervisor that he was going to see his family physician; his supervisor indicated that the Claimant would need a doctor's excuse. On June 2, 1998, however, Claimant went to the hospital emergency room and was admitted to the hospital for suicidal depression. Claimant was hospitalized as an in-patient from June 2 to June 16, 1998, during which time he was on medication and treated for his depression and related health problems.

Claimant was scheduled to work on June 3–5 and June 8–10, 1998, but was absent because of his hospitalization. He failed to

---

1. The term "willful misconduct" has been judicially defined as: (1) an act of wanton or willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 625 A.2d 622 (1993).

2. Section 402(e) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

properly notify management of his hospitalization during this period. On June 11, 1998, Claimant telephoned his supervisor to indicate that he would be returning to work when the doctor released him., The supervisor told Claimant that he would have to speak to the front office. On June 16, 1998, Claimant was discharged from the hospital and called his supervisor to state that he would be able to return to work. Employer's personnel manager informed Claimant that according to company policy, he was discharged because he had failed to report to work or report off during the period from June 3 to June 11, 1998.

The Job Center denied benefits to Claimant, which determination was affirmed by the Referee after a hearing at which Claimant and Employer's representative testified. Claimant appealed and the Board, reversing the Referee's decision, found that Claimant was not ineligible for benefits under Section 402(e) of the Law. Employer filed the present appeal.[3]

■ Where an employee has been discharged based upon his willful misconduct in violating a work rule of the employer, the burden is on the employer to establish the existence of the work rule, its reasonableness, and its violation. Once the employer proves the existence of a rule, its reasonableness, and the fact of its violation, the burden of proof shifts to the claimant to prove that he had good cause for his action. *Connelly v. Unemployment Compensation Board of Review*, 68 Pa.Cmwlth. 635, 450 A.2d 245 (1982). Although this Court has held that, usually, non-intentional, inadvertent violations of an employer's work rules do not constitute willful misconduct, nevertheless exceptions have been created where an employee's conduct could jeopardize an employer's effective operations or place the public at risk. *United Refining Co. v. Unemployment Compensation Board of Review*, 661 A.2d 520 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 721, 672 A.2d 312 (1995).

■ In the present case, the Employer's absence-notification policy that an absence of three working days without properly notifying management is deemed to be a "voluntary quit," resulting in immediate discharge, is not disputed. However, review of the record indicates that Claimant had "good cause" for failing to comply with Employer's notification rule, specifically, his hospitalization from June 2 until June 16, 1998 for suicidal depression and substance abuse, for which conditions he was placed on medication. In this regard, the record supports the Board's finding that because of Claimant's confused state and the medication he received while hospitalized, he was incapable of complying with Employer's three-day absence notification policy. During the hearing, Claimant testified as follows:

C.: And I was still pretty confused, you know. My concern was—at the time, I was really thinking about how my feelings were ... And I thought that I had an understanding with the company, you know, through George, that they knew that that's what I was going in for –depression, because of alcohol and suicidal thoughts. And then I told them that when I come back, I'd have a doctor's excuse. And I had already talked to him before ... So in my mind, I thought I had everything taken care of....And then going through detox, I was confused on a lot of issues. My reading and writing is not really the best in the world. I graduated at a third grade reading level, and my writing is ... it ain't even second....And so sometimes I ask questions a lot....But I was just confused.

R. [W]hen you were admitted to the hospital, did you have access to a telephone?

C. There was a phone there, a pay phone that was shut off during the day from 9:00 until 4:00. And they had certain meetings you had to go to when they shut the phone off....And I was on – I'm on medication. When I went in there, I was on a medication called Imipramine....

---

**3.** Our scope of review in this case is limited to determining whether constitutional rights have been violated, errors of law were committed, or whether findings of fact were supported by substantial evidence. *Andrews v. Unemployment Compensation Board of Review,* 159 Pa.Cmwlth. 455, 633 A.2d 1261 (1993).

R. And you're still on that medication?

C. Yes.

R. And is that an antidepressant. . . .

C. Yes. An antidepressant. And it slows me down – slows my thoughts, my reaction time. . . . And I didn't realize . . . that I was not functioning . . . up to snuff, you could say. But I don't know where my thought were about. . . .

(N.T., 7–21–98, pp. 10a – 12a.) Although there is no dispute that Claimant failed to comply with Employer's three-day absence-notification policy, said failure does not rise to the level of willful misconduct. Prior to his hospitalization, Claimant advised his supervisor of the health difficulties he was experiencing. Moreover, there is no evidence of record submitted by Employer to establish that Claimant's failure to provide notice of his hospitalization from June 2 to June 16th in any way "jeopardized" Employer's effective operations or "placed the public at risk."

By way of analogy, we note that in *Dunn v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 69, 428 A.2d 1021 (1981), as in the present case, a claimant was discharged on the ground that he had failed to comply with his employer's rule mandating the discharge of employees if they were absent without notice for three consecutive days. The Office of Employment Security determined that Dunn's failure to notify his employer for three consecutive days constituted willful misconduct and both the referee and the Board affirmed denial of benefits. However, this Court reversed and stated that "the findings of the Board, while supported by substantial evidence, do not justify as a matter of law the conclusion that the claimant's conduct here constituted willful misconduct." *Id.*, 428 A.2d at 1022. Similarly, the present Claimant's failure to notify Employer, while clearly a violation of Employer's policy, does not constitute willful misconduct.

Accordingly, the Board's decision is affirmed.

### ORDER

AND NOW, this 17th day of March 1999, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.