# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Chester Community Charter School,<br>Petitioner<br><br>v.<br><br>Unemployment Compensation Board of Review,<br>Respondent | :<br>:<br>:<br>:  No. 1180 C.D. 2015<br>:<br>:  Submitted: November 20, 2015<br>:<br>:<br>:<br>: |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED: February 17, 2016


Chester Community Charter School (Employer) petitions for review of the June 15, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision that Shanique E. Fontaine (Claimant) was not ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[2]

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee will be ineligible for unemployment compensation for any week "[i]n which his unemployment is due to discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. §802(e).

**Facts and Procedural History**

Claimant worked full-time as a Principal Secretary for Employer from August 28, 2013, until her last day of work on January 23, 2015. The local service center determined that Claimant was ineligible for unemployment compensation benefits because she committed willful misconduct. Claimant appealed that determination to a referee who held a hearing on April 16, 2015.

The underlying facts are largely undisputed. Susan Wadkins (Wadkins), Employer's Director of Human Resources, testified that Employer has a policy contained within its code of conduct which prohibits the falsification of records or documents and provides that violation of its policy is grounds for disciplinary action up to and including termination. Wadkins stated that Employer's code of conduct is contained within an employee handbook which is distributed to employees at the beginning of every year and produced a signed acknowledgment form indicating that Claimant received an employee handbook. Wadkins testified that she terminated Claimant for violating Employer's code of conduct; specifically, Wadkins terminated Claimant for falsifying employee time cards. (Reproduced Record (R.R.) at 5a-8a.)

Wadkins further testified that Employer classifies its paraprofessional staff members as hourly employees and authorizes them to work a maximum of twenty-nine hours per week. Wadkins stated that part of the Principal Secretary's duties is time keeping; that is, the Principal Secretary must review employees' time cards, confirm that they are working no more than twenty-nine hours per week, and send the time cards to the payroll department. Wadkins stated that, if an employee works more than twenty-nine hours per week, the Principal Secretary should notify

2

the Principal and the Principal would modify the schedule to ensure that the employee only works twenty-nine hours per week. (R.R. at 9a, 13a.)

Wadkins testified that employees had been approaching Claimant about scheduling issues that she was not authorized to resolve. As a result, Wadkins arranged a meeting with Claimant and Diane Stover (Stover), Employer's Director of Child Accounting, on January 9, 2015, to discuss Claimant's time-keeping duties and other issues. At the meeting, Wadkins advised Claimant that, if employees were having issues with the schedule or were not doing what they were told, the issue should be reported to her immediate supervisor, the Principal. If the Principal could not remedy the situation or was unavailable, Claimant could report the issue to Wadkins or Stover. Wadkins testified that, at the January 9, 2015 meeting, she informed Claimant that Employer does not alter time cards and denied previously advising Claimant to alter and initial a time card when an employee worked more than twenty-nine hours in a week. Wadkins explained that Employer would pay an employee for all time worked if an employee worked more than twenty-nine hours per week; however, Employer monitored employees' hours and could discipline an employee who exceeded the hour limit. (R.R. at 12a-14a.)

Wadkins stated that, on January 23, 2015, Claimant sent Wadkins an email, advising her that certain paraprofessional staff members had worked more than twenty-nine hours per week during the relevant pay period. Pursuant to the email, Claimant informed Wadkins that she had altered the time cards to reflect that those employees only worked twenty-nine hours and initialed the time cards to indicate that she made the changes; specifically, Claimant altered the times that employees had clocked-in or clocked-out of work. Wadkins explained that Stover replied to Claimant's email and advised her that she could not modify the hours that employees

3

had worked because it violated state wage laws. Claimant apologized and insisted that she would not alter time cards in the future. Wadkins testified that she suspended Claimant pending an investigation to determine whether Claimant had violated Employer's policy prohibiting the falsification of records or documents. Wadkins further testified that she and Stover reviewed the relevant time cards and concluded that Claimant had violated Employer's policy prohibiting the falsification of records and, consequently, terminated Claimant. (R.R. at 10a-11a.)

Stover confirmed that employees were approaching Claimant to discuss scheduling issues that she was not authorized to resolve and testified that the purpose of Claimant's weekly review of the time cards was to monitor employees' hours before they were in danger of exceeding the twenty-nine hour weekly limit. Stover stated that, at the January 9, 2015 meeting, she and Wadkins advised Claimant that changing time cards was unacceptable.

Claimant testified that she received an employee handbook when she was hired which contained Employer's policy prohibiting the falsification of company records and that she was aware that an employee who violated Employer's policy could be subject to discipline up to and including termination. Claimant confirmed that she met with Wadkins and Stover on January 9, 2015, to discuss her time-keeping duties and stated that, at the meeting, Wadkins and Stover advised her that employees were not allowed to work more than twenty-nine hours per week, that any issues should be reported to the Principal, and that she could report to Wadkins or Stover if the Principal was unavailable.

Claimant acknowledged that she had altered employees' time cards, but testified that she did not believe Employer's policy prohibited her from doing so because she was working in payroll and initialed the alterations. Claimant explained

4

that employees were clocking-in fifteen minutes early or staying fifteen minutes late and that she had instructed them that they were not allowed to do so, but stated that she and the other employees believed that she was responsible for manually adjusting the time cards to reflect the hours that employees were scheduled to work. Claimant testified that she believed Employer's policy only prohibited staff members from altering their own time cards because she had previously changed time cards and signed them to indicate that she had made the changes. Claimant stated that she did not know that it was illegal to pay an employee for fewer hours than were worked and that she would not have changed the time cards if she did. Claimant further testified that she committed an honest error and, if she knew what she was doing was illegal, she would not have initialed the time cards or emailed Wadkins to advise her that she made the alterations. (R.R. at 12a, 16a-18a.)

Following the hearing, the referee determined that Employer presented sufficient evidence to prove that it had a policy prohibiting the falsification of documents, including time cards, and that Claimant was aware of the policy. However, the referee found Wadkins testimony that she specifically advised Claimant not to alter time cards at the January 9, 2015 meeting not credible and found Claimant's testimony that she misunderstood the time-keeping instructions she was given credible. The referee concluded that Claimant exhibited poor judgment and the Employer had the right to discharge her; however, her conduct did not amount to willful misconduct and, accordingly, she was entitled to compensation benefits. Employer appealed the referee's decision to the Board, which affirmed the referee.

The Board found Claimant's testimony that she had previously modified and initialed time cards to indicate changes credible, adopted the referee's findings of fact and conclusions of law, and determined that Employer failed to establish that

5

Claimant intentionally falsified time cards. Accordingly, the Board concluded that Claimant's confusion regarding Employer's policy did not constitute willful misconduct.

On appeal to this Court,[3] Employer argues that the Board erred because it failed to shift the burden to Claimant and require her to show good cause for violating Employer's policy after Employer established that Claimant was aware of and violated Employer's policy prohibiting the falsification of records. Employer also argues that the Board's conclusion that Claimant did not commit willful misconduct is not supported by the record because the Board failed to find that Claimant showed good cause for violating a known Employer rule.

**Discussion**

Initially, we note that the Law does not define willful misconduct. However, our Supreme Court has defined willful misconduct as:

> an act of wanton of willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interests or of the employer's duties and obligations to the employer.

*Myers v. Unemployment Compensation Board of Review*, 625 A.2d 622, 625 (Pa. 1993).

---

[3] Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. *Leace v. Unemployment Compensation Board of Review*, 92 A.3d 1272, 1274 n.2 (Pa. Cmwlth. 2014). In unemployment cases, the Board is the ultimate fact-finder and is empowered to make all determinations regarding witness credibility and evidentiary weight and its findings are binding on appeal when supported by substantial evidence. *Id*. at 1276.

An employer alleging willful misconduct bears the burden of proving the existence of a reasonable work rule and its violation. *Daniels v. Unemployment Compensation Board of Review*, 755 A.2d 729, 731 (Pa. Cmwlth. 2000). The employer must also show that the employee intentionally or deliberately violated the work rule. *Tongel v. Unemployment Compensation Board of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985); *see also MacFarlane v. Unemployment Compensation Board of Review*, 317 A.2d 324, 326 (Pa. Cmwlth. 1974) ("In all these definitions [of willful misconduct] there is an element indicating a consciousness of wrongdoing on the part of the employe[e]."). An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 426 (Pa. 2003); *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review*, 419 A.2d 238, 239 (Pa. Cmwlth. 1980). Therefore, a determination of what constitutes willful misconduct requires consideration of all the relevant circumstances. *Rebel v. Unemployment Compensation Board of Review*, 723 A.2d 156, 158 (Pa. 1998).

If an employer meets its initial burden to establish the existence of a reasonable work rule and its deliberate violation, the burden shifts to the claimant to demonstrate good cause for violating the rule. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 522 (Pa. Cmwlth. 1999). However, where an employer fails to carry its initial burden of proving a deliberate violation, it is unnecessary to consider whether the claimant's conduct constitutes good cause. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 969 (Pa. Cmwlth. 2010).

Employer asserts that the Board erred because it failed to shift the burden to Claimant and require her to establish good cause for violating Employer's

rule after Employer proved the existence of a reasonable work place rule, Claimant's knowledge of the rule, and its violation. Employer asserts that the Board's determination essentially required Employer to prove that Claimant acted with wrongful or malicious intent, which is a departure from established precedent.

This Court's decision in *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965 (Pa. Cmwlth. 2010), is instructive. In *Philadelphia Parking Authority*, the claimant worked the 3:30 p.m. to midnight shift as a money-room technician and was required to sit in a room for hours at a time with nothing to do. The claimant advised the employer that she suffered from sleep apnea and requested additional work to keep her busy and prevent her from falling asleep; however, notwithstanding two limited assignments, the employer did not offer the claimant additional work. The claimant fell asleep during a shift and was terminated for violating the employer's policy prohibiting sleeping on the job.

The claimant applied for unemployment compensation, but the local service center concluded that she was ineligible for benefits because she committed willful misconduct when she fell asleep during her shift. The claimant appealed to a referee, who reversed the service center and determined that the claimant's conduct did not constitute willful misconduct. The employer appealed to the Board, which affirmed the referee and concluded that the claimant's medical condition constituted good cause for violating the employer's rule. The employer appealed to this Court, arguing that the Board erred in relying solely on the claimant's testimony to determine that she suffered from a medical condition that caused her to fall asleep. We affirmed on other grounds, reasoning that the employer failed to meet its initial burden because it did not prove that the claimant intentionally or deliberately violated

its work rule. Accordingly, we concluded that the burden never shifted to the claimant and, therefore, there was no need to consider whether her actions constituted good cause for violating employer's work rule.

Here, the Board determined that Employer failed to prove that Claimant *intentionally* falsified time cards when she altered them and, therefore, her conduct did not constitute willful misconduct. As in *Philadelphia Parking Authority*, Employer did not meet its initial burden because it failed to establish that Claimant intentionally or deliberately violated its work rule and the burden never shifted to Claimant to prove good cause for her violation. Accordingly, Employer's argument that the trial court erred when it failed to shift the burden to Claimant to prove good cause is without merit.

Employer cites a number of cases to suggest that establishing the existence of a known work rule and its violation is sufficient to shift the burden to Claimant and require her to prove good cause for her violation. The cited authorities are factually inapposite to the instant case because a critical component that is absent here was that the claimants in those cases were previously warned that their conduct violated the employers' rules. Employer cites testimony from the referee's hearing to suggest that the instant case falls within the purview of the cited authority; specifically, Employer states that it "presented testimony that the Claimant was expressly told, on January 9, 2015, that she was not to alter the time cards." (Petitioner's brief at 8.) However, Employer disregards the referee's specific finding, adopted by the Board, that the relevant testimony was not credible. Because the referee's credibility determination is binding on appeal, Employer's argument fails.

The sole case Employer cites that does not involve a prior warning is *Heitczman v. Unemployment Compensation Board of Review*, 638 A.2d 461 (Pa.

Cmwlth. 1994) (en banc). In *Heitczman*, the employer's rule required its truck drivers to exit their vehicles before backing up to confirm that their path was unobstructed. The claimant did not comply with this rule and an accident occurred. On appeal to this Court, the claimant asserted that his conduct did not constitute willful misconduct because he did not make a deliberate decision to operate the truck improperly. Instead, the claimant argued that he committed an inadvertent mistake and his conduct constituted negligence at most. Our Court recognized the existence of the employer's policy and the claimant's awareness and violation thereof. In our decision in *Morysville*, we noted that an employee violated a shop rule by punching the time card of another employee, but we affirmed the Board's finding that the employee's action was solely based on a mistake because the claimant credibly testified that he punched another employee's timecard because he believed it belonged to him. We distinguished *Morysville* from *Heitczman,* noting that the claimant's backing-up of his truck without performing a "walk around" was not inadvertent or negligent behavior, "but is more akin to disobedience of a direct instruction." *Heitzcman,* 638 A.2d at 464.

Here, there was nothing in the record or credible testimony to indicate that Claimant was advised contrary to Employer's policy. Instead, Claimant's credible testimony established that she was confused about Employer's policy because she had previously altered time cards and initialed them to indicate that she had made the change. (R.R. at 16a-17a.) Therefore, the instant case presents a situation where Claimant attempted to comply or believed she was complying with Employer's rule and stands in stark contrast to the disobedience of a direct instruction that was at issue in *Heitczman*. Claimant's confusion regarding Employer's policy does not amount to willful misconduct and, thus, Employer's argument is

10

unpersuasive. *See also Frazier v. Unemployment Compensation Board of Review*, 411 A.2d 580, 582 (Pa. Cmwlth. 1980) ("Willful misconduct implies action of an intentional and deliberate nature, whereas the present facts indicate an honest mistake made by an employee who was aware of his responsibilities and unintentionally erred in his efforts to perform them.").

Next, although Employer does not challenge any specific findings, Employer argues that the Board's conclusion that Claimant did not commit willful misconduct is unsupported by the record because the Board did not find that Claimant had good cause for violating a known Employer rule.

As indicated above, an employer bears the initial burden of proving the existence of a work rule and its deliberate violation. The burden shifts to the claimant to show good cause *only after* the employer's initial burden is met. Where the initial burden is not met, there is no need to consider whether the claimant's conduct constitutes good cause.

Here, the Board found Claimant's testimony credible that she had previously modified time cards and signed them to indicate that she had made the changes; that she did not believe Employer's rule applied to her because she was working in payroll and not altering her own time card; that she committed an honest mistake and did not know it was illegal to pay employees for fewer hours than they had worked; and that she would not have initialed the changes and reported them to Wadkins if she did. Moreover, the Board adopted the referee's finding that specifically discredited Employer's testimony that Claimant was advised on January 9, 2015 that she was not to alter time cards. (Referee's decision at 2; Board decision at 1.) Consequently, Employer cannot rely upon this testimony on appeal. *Metropolitan Edison Company v. Unemployment Compensation Board of Review*,

606 A.2d 955, 957 (Pa. Cmwlth. 1992). Here, the credible testimony supports the Board's conclusion that Employer failed to meet its initial burden to establish Claimant's intentional violation of its work rule. Hence, the burden never shifted to Claimant and the Board was not obligated to consider whether Claimant's conduct constituted good cause. *Philadelphia Parking Authority*, 1 A.3d at 969.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Community Charter  :
School,         :
     Petitioner  :
           :  No.  1180 C.D. 2015
     v.     :
           :
Unemployment Compensation :
Board of Review,    :
     Respondent :

## ***ORDER***

   AND NOW, this 17th day of February, 2016, the June 15, 2015 order of the Unemployment Compensation Board of Review is affirmed.

         _____
         PATRICIA A. McCULLOUGH, Judge