IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark D. Callahan,                          :
                    Petitioner             :
                                           :
          v.                               :
                                           :
Unemployment Compensation                  :
Board of Review,                           :    No. 513 C.D. 2020
                    Respondent             :    Argued: February 9, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: March 8, 2021


          Mark D. Callahan (Claimant) petitions for review of the April 28, 2020
order of the Unemployment Compensation Board of Review (Board), which
affirmed the determination of the referee deeming Claimant ineligible for
unemployment compensation benefits (benefits) pursuant to Section 402(e) of the
Unemployment Compensation Law (Law).[1]  Upon review, we affirm.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§ 802(e).

# I. Background

Claimant worked full-time as a sales manager for Mount Lebanon Cemetery (Employer)[2] from April to October 2019. Referee's Decision & Order dated January 2, 2020 (Referee's Decision) at 1, Finding of Fact (F.F.) 1, Certified Record (C.R.) at 178. Employer maintains written guidelines for sales managers, which Employer provided to Claimant upon his initial hire. F.F. 2, C.R. at 178. Employer's guidelines included a policy prohibiting the falsification of documents. F.F. 3, C.R. at 178. Claimant was, or should have been, aware of Employer's policy. F.F. 4, C.R. at 179. Employer also provided training regarding the completion of consumer contracts during Claimant's employment. F.F. 8, C.R. at 179. As legally binding documents, such contracts are to be completed and signed by the sales counselor who performed the sale. F.F. 7, C.R. at 179.

In September 2019, Claimant forged the signature of subordinate sales counselor Nicole Morrow (Morrow) to a retail installment contract and security agreement (contract) for a sale that he completed.[3] F.F. 6 & 9, C.R. at 179. The next day, the general manager confronted Claimant regarding the forged signature, and Claimant admitted to forging Morrow's name. F.F. 10-11, C.R. at 179; *see also* Notes of Testimony, December 30, 2019 (N.T. 12/30/19) at 7, C.R. at 115. Employer thereafter discharged Claimant for violating its written policy prohibiting

---

[2] Employer is a subsidiary of parent company Stonemor GP, which operates several hundred cemeteries across the United States. Finding of Fact (F.F.) 1, Certified Record (C.R.) at 178; Notes of Testimony, December 30, 2019 (N.T. 12/30/19) at 1, C.R. at 109.

[3] The contract pertained to a burial vault installation, a casket, and an opening and closing fee for the burial space. N.T. 12/30/19 at 7, C.R. at 115.

the falsification of documents by forging a signature on the contract. F.F. 15, C.R. at 179.[4]

Claimant thereafter filed an application for unemployment compensation (UC) benefits. F.F. 16, C.R. at 179. In November 2019, the UC Service Center issued a notice of determination indicating Claimant was ineligible for benefits under Section 402(e) of the Law. *See* Notice of Determination dated November 25, 2019 at 1, C.R. at 85. The UC Service Center found that Employer discharged Claimant for violating the portion of its Code of Conduct prohibiting the falsification of documents by signing another agent's name to a contract, and that Claimant was or should have been aware of Employer's rule. *See id.* The UC Service Center determined that Claimant violated Employer's rule by signing Morrow's name to a contract, even though Claimant asserted Morrow "was helping him by phone" and he signed her name "as a kindness for her." *Id.*

Claimant appealed the determination, contending that good cause justified the alleged misconduct. *See* Petition for Review dated December 9, 2019 at 1 & 3, C.R. at 89 & 91. Asserting that his supervisor granted responsibility over his training to Morrow, who had already worked for Employer for six years, Claimant maintained that "approval for [his] actions as well as any culpability reside[d] with them." *Id.* Claimant further contended that his "actions enriched the company, the mistake was corrected easily without problem or incident, and the companies [sic] interests were never injured in the least." *Id.*

The referee held a hearing in December 2019, at which Claimant failed to appear. *See* N.T. 12/30/19 at 2, C.R. at 110. Kara Hollabaugh (Hollabaugh), Employer's general manager, testified on behalf of Employer. *See* N.T. 12/30/19 at

---

[4] At the time of his termination, Claimant was already on a performance improvement plan due to previous unsatisfactory job performance. *See* F.F. 5, C.R. at 179.

1, C.R. at 109. Hollabaugh attested that she terminated Claimant because "[h]e forged a name on [] a legal contract" by signing Morrow's name to the contract for a sale that he had completed, "which he was well aware [] he shouldn't have done." N.T. 12/30/19 at 5-6 & 8, C.R. at 113-14 & 116. Hollabaugh explained that Claimant was aware of the rule regarding the falsification of documents, which appeared in Employer's guidelines, was addressed in training, and was also covered in a class on contracts that Claimant took several times. *See* N.T. 12/30/19 at 8, C.R. at 116. Hollabaugh also attested that her administrator, who bore the responsibility of verifying the accuracy of contracts, "had gone over it with him several times." *Id.* Although she acknowledged that she was unsure whether Employer's sales manager guidelines contained a "provision specifically . . . [prohibiting] forging a name on a contract," Hollabaugh testified that Claimant "completed an online training module that goes over contract writing" and "addresses whose names are to go on the contract." N.T. 12/30/19 at 9, C.R. at 117. Hollabaugh attested that page 15 of Employer's sales manager guidelines addresses falsification of documents, which Claimant would have reviewed during training, and that Claimant had to provide a signature acknowledging that he read the policy.[5] *See id.* Hollabaugh identified Claimant's signature to Employer's policy before the referee. *See id.*; *see also* Guideline Acceptance, C.R. at 134. Hollabaugh attested that under no circumstances would an employee be permitted to sign on behalf of another employee, even if an annotation or initials were provided. *See* N.T. 12/30/19 at 9, C.R. at 117. Hollabaugh explained that Employer does not even permit customers who have obtained powers of attorney for loved ones to sign on their behalf. *See id.*

---

[5] Employer's Code of Conduct, located in its Sales Manager Guidelines, provides that "[f]alsifying documents" constitutes misconduct. Sales Manager Guidelines at 15, C.R. at 150.

Hollabaugh further explained that Claimant's status as a salaried employee precluded him from collecting sales commissions and that Claimant was permitted to designate Morrow to receive the commission on his sale; however, he failed to do so in accordance with Employer's protocol. N.T. 12/30/19 at 8, C.R. at 116. Hollabaugh stated that in purportedly authorizing Claimant to sign her name, Morrow "was under the impression [the signature] was only for commission purposes," and that "her name would have been handwritten on another form, not on the contract." N.T. 12/30/19 at 5-6, C.R. at 113-14. Hollabaugh attested that sales commissions are memorialized in "a totally separate document that isn't a binding contract" and that "[Claimant] was aware of that[.]" N.T. 12/30/19 at 7-8, C.R. at 115-16. Hollabaugh also testified that Claimant asked Morrow over the phone "if he could put the contract in her name[,] meaning the commission, not the actual signature on the contract[.]" N.T. 12/30/19 at 8, C.R. at 116.

By decision in January 2020, the referee affirmed the UC Service Center's denial of benefits. *See* Referee's Decision at 1-3, C.R. at 178-80. The referee noted that Claimant failed to appear at the hearing, and found Employer's proffered testimony credible. *See id.* The referee determined that Employer presented sufficient competent testimony and evidence to establish the existence of its policy prohibiting falsification of records; that Claimant was, or should have been, aware of Employer's policy; and that Claimant violated Employer's policy. *See* Referee's Decision at 3, C.R. at 180. The referee, therefore, concluded that Employer met its burden of establishing that it terminated Claimant for willful misconduct in connection with his work, such that the burden shifted to Claimant to demonstrate good cause for his misconduct. *See id.* The referee determined that

5

because Claimant failed to appear for the hearing, the record contained insufficient evidence to establish that Claimant had good cause for his actions. *See id.*

Claimant appealed the referee's determination to the Board, asserting that he was denied the opportunity to participate in the December 30, 2019 hearing because he was not notified of the date and time of the hearing. *See* Petition for Review dated January 8, 2020 at 5, C.R. at 189. Claimant also challenged the referee's decision on the merits. *See id.* After review, the Board issued an order remanding the matter to the referee "to receive testimony and evidence on [] [C]laimant's reason for his nonappearance at the previous hearing." Board Order dated February 10, 2020 (Board's February 2020 Order) at 1, C.R. at 199; *see also* Board Memorandum dated February 3, 2020, C.R. at 197. The Board further stated that "[t]he parties . . . [could] provide new or additional testimony and evidence on the merits," which would be considered if Claimant established proper cause for his nonappearance.[6] Board's February 2020 Order at 1, C.R. at 199; *see also* Notice of Remand Hearing dated February 13, 2020, C.R. at 202.

In March 2020, the referee conducted a remand hearing, at which Claimant testified. *See* Notes of Testimony, March 13, 2020 (N.T. 3/13/20) at 1, C.R. at 227. Claimant also provided the testimony of Nkokota Vanda (Vanda), the customer whose contract was at issue. *See* N.T. 3/13/20 at 1 & 12, C.R. at 227 & 238.

Claimant testified that Hollabaugh did not raise any issue regarding the signing of the contract at the time of his termination; rather, he claimed that Hollabaugh cited his failure to understand and to document contracts, his failure to

---

[6] In its subsequent decision on appeal, the Board found that Claimant's failure to receive notice of the December 2019 hearing constituted good cause for his nonappearance at the first hearing. Board Order dated April 28, 2020 (Board's April 2020 Order) at 1, C.R. at 252. Employer does not challenge that finding.

complete necessary training, and his inability to manage the office generally. N.T. 3/13/20 at 8-11, C.R. at 234-37. Thus, he implied that his alleged misconduct was not the true reason for his discharge. *See id.*

Claimant testified further that Morrow was "responsible for assisting in [his] training," and that he called her on the phone to "walk[] [him] through the entire contract [with Vanda], line item by line item." *See* N.T. 3/13/20 at 9, C.R. at 235. Claimant testified that when they reached the signature line, he informed Morrow that he "would like to give [her] credit for the sale as a reward for [her] help," and that he signed her name with her express permission. *Id.* Claimant testified that he included Morrow's state license number beneath her name, and that she provided this number over the phone. N.T. 3/13/20 at 9-10, C.R. at 235-36. Claimant acknowledged that Hollabaugh informed him the day following the incident that Morrow lacked the authority to enable him to sign on her behalf, that the contract "would not stand the scrutiny of an audit," and that Vanda would need to sign a duplicate contract. N.T. 3/13/20 at 10, C.R. at 236. Claimant attested that he re-executed the duplicate contract, as instructed, at which point he learned that designating the recipient of the sales commission required the completion of separate paperwork. *Id.*

Vanda testified that Morrow participated by speakerphone during her meeting with Claimant, and that Morrow "did give [Claimant] permission to do whatever he did[.]" N.T. 3/13/20 at 13, C.R. at 239. Vanda stated that she asked Morrow whether Claimant was permitted to sign her name to the contract. *See id.* Vanda further testified that she "was upset about it" because she "[knew] this was wrong" and that she would likely be required to re-execute the contract. *Id.*

7

After considering the additional evidence, the Board affirmed the referee's denial of benefits pursuant to Section 402(e) of the Law. *See* Board Order dated April 28, 2020 (Board's April 2020 Order) at 1, C.R. at 252. The Board adopted the referee's findings and conclusions and stated that it considered the entire record, including the testimony and evidence offered at the remand hearing. *See id.* The Board determined that, although Claimant testified that he obtained permission from his subordinate before signing her name to the contract, "[E]mployer credibly testified there is never a situation where [an employee] can sign on someone's behalf." *Id.* Further, in addition to adopting the referee's finding and conclusion that Employer presented sufficient credible evidence of its written policy prohibiting falsification of records and Claimant's knowledge of the same, the Board stated that "[e]ven absent a policy, the behavior standard here is obvious and . . . [C]laimant's conduct is so inimical to . . . [E]mployer's best interests that discharge is the natural result." *Id.*

Claimant submitted a request for reconsideration to the Board, which was denied by operation of law when the Board did not act on it.[7] Claimant thereafter petitioned this Court for review.

## II. Willful Misconduct

Section 402(e) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). The burden of proving willful

---

[7] Pursuant to Section 35.241(d) of the General Rules of Administrative Practice and Procedure, "[u]nless the agency head acts upon [an] application for rehearing or reconsideration within 30 days after it is filed, or within the lesser time as may be provided or prescribed by law (see subsection (e)), the application shall be deemed to have been denied." 1 Pa. Code § 35.241(d).

8

misconduct rests with the employer. *Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 606 (Pa. Cmwlth. 2011).

Although not defined by statute, willful misconduct has been described as "(a) wanton and willful disregard for an employer's interests, (b) deliberate violation of an employer's rules, (c) disregard for standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interests or an employee's duties and obligations." *Caterpillar, Inc. v. Unemployment Comp. Bd. of Rev.*, 703 A.2d 452, 456 (Pa. 1997). Establishing willful misconduct in the nature of a work rule violation requires an employer to prove the existence of a reasonable work rule, the employee's awareness of the rule, and the employee's intentional or deliberate violation of the rule. *Graham v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1054, 1058 (Pa. Cmwlth. 2004); *see also Bishop Leonard Reg'l Catholic Sch. v. Unemployment Comp. Bd. of Rev.*, 593 A.2d 28, 31 (Pa. Cmwlth. 1991).

If the employer meets its burden of establishing a violation of its rule, the burden then shifts to the claimant to demonstrate good cause for his noncompliance. *Henderson v. Unemployment Comp. Bd. of Rev.*, 11 A.3d 699, 719 (Pa. Cmwlth. 2013). In evaluating a claimant's proffered justification, the court must examine whether the employee's conduct is justifiable or reasonable under the circumstances. *Metro. Edison Co. v. Unemployment Comp. Bd. of Rev.*, 606 A.2d 955, 957-58 (Pa. Cmwlth. 1992). Extraordinary circumstances are necessary to justify an employee's refusal to comply with an employer's reasonable work rule. *See id.*; *see also Hayes v. Unemployment Comp. Bd. of Rev.*, 387 A.2d 186, 188 (Pa. Cmwlth. 1978).

9

On appeal to this Court,[8] Claimant argues that signing Morrow's name to the contract did not constitute willful misconduct. *See* Claimant's Br. at 19-20. Claimant contends that Employer lacked a clear policy regarding the falsification of documents, as "what exactly constituted forgery or falsification was noticeably lacking." *See id.* at 18-19 & 21. Claimant asserts that "there is no verifiable evidence as to the content of . . . [Employer's training] modules" regarding contract writing apart from Hollabaugh's testimony. *Id.* at 25. Further, Claimant maintains he "reasonably believed" that Morrow authorized him to sign her name to the contract, as she "had over six years of experience" and "was actually the person providing guidance to [] Claimant regarding his job duties." *Id.* at 19-21. Citing Section 4101(a) of the Crimes Code, 18 Pa.C.S. § 4101(a), Claimant contends that "several of the elements of a claim of forgery or falsification of documents are lacking," because "there clearly was no intent to defraud," and Claimant "was actually acting in a way that he thought was in [] Morrow's and in turn his [E]mployer's best interests[.]" *Id.* at 17.[9] Claimant further asserts that this matter is distinguishable from precedent involving willful misconduct predicated upon the falsification of documents, as he did not knowingly perpetuate a falsehood or

---

[8] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Whether an employee's conduct rises to the level of willful misconduct is an issue of law reviewable by this Court. *Andrews v. Unemployment Comp. Bd. of Rev.*, 633 A.2d 1261 (Pa. Cmwlth. 1993).

[9] Claimant also notes that the Uniform Commercial Code defines an unauthorized signature as a "signature made without actual, implied, or apparent authority," "includ[ing] a forgery." Claimant's Br. at 17 (quoting 13 Pa.C.S. § 1-201(41)). Further, Claimant asserts that "there is nothing in the regulations governing the content of burial contracts that actually prohibited [him] from signing a contract in the name of another employee," nor was there anything "on the face of the contract in this case to indicate that [] Claimant could not sign [] Morrow's name to it." *Id.* at 20-21 (citing 49 Pa. Code § 13.204).

10

misrepresentation and the "mistake was easily corrected." *Id.* at 22-23. Claimant also asserts that he derived no financial benefit from his actions. *Id.* at 26 & 29-30. Finally, Claimant maintains that he did not exhibit conscious indifference towards the duty he owed Employer. *Id.* at 24.

The Board counters that Claimant committed willful misconduct because signing Morrow's name to the contract violated Employer's policy regarding the falsification of documents. Board's Br. at 8. The Board contends that Claimant failed to demonstrate good cause for his misconduct because Morrow lacked the ability to authorize Claimant to sign on her behalf. *See id.* at 13. Further, the Board highlights and credits the testimony of Employer's witness establishing that Claimant received training regarding the execution of contracts, specifically including the placement of requisite signatures. *See id.* at 6-9. The Board also asserts that regardless of whether Claimant intended to harm Employer, his actions exhibited a conscious indifference towards the duty he owed Employer, as well as reckless disregard for the consequences thereof. *Id.* at 12 n.5.

Moreover, the Board maintains that "it was not reasonable for Claimant to think it was appropriate to sign another's signature." Board's Br. at 14. In so arguing, the Board observes that this Court has held that regardless of Employer's particular policy, using someone else's initials is contrary to common sense practice and disregards the standards of behavior an employer may rightfully expect from an employee. *Id.* (citing *Seton v. Unemployment Comp. Bd. of Rev.*, 663 A.2d 296, 298-99 (Pa. Cmwlth. 1995) (claimant committed willful misconduct by signing a co-worker's initials to his own quality control assignment in violation of employer's policy prohibiting "improper conduct of a common sense nature")).

Our review of the record reveals substantial evidence in support of the Board's findings. Based on Hollabaugh's testimony and the documentary evidence presented, the Board found as a fact that Employer maintains written guidelines for sales managers, which Employer provided to Claimant upon initial hire, and which include a written policy prohibiting the falsification of documents. F.F. 2-3, C.R. at 178. Further, these guidelines specifically identify the falsification of documents as an example of willful misconduct.[10] *See* Sales Manager Guidelines 2018 at 5 & 15, C.R. at 140 & 150. The Board adopted the referee's findings and conclusions as to the credibility and weight of this proffered evidence. *See* Board's April 2020 Order, C.R. at 252. It is not the function of this Court to second guess the Board's credibility and evidentiary determinations. *See Cambria Cnty. Transit Auth. (CAMTRAN) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (providing that "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review"). Thus, substantial evidence existed to support the Board's finding that Employer established the existence of its rule prohibiting the falsification of documents.

The record also contains substantial evidence to support the Board's finding that Employer established Claimant's awareness of its policy prohibiting the falsification of documents. Claimant acknowledged by signature that he received, read, and understood Employer's sales manager guidelines, and the Board found as a fact that Claimant was, or should have been, aware of Employer's policy prohibiting the falsification of documents. *See* Sales Manager Guidelines 2018,

---

[10] Black's Law Dictionary defines the term "falsify" as to forge, misrepresent, or tamper with a document or record "by interlineation, obliteration, or some other means," providing by way of example, "the chiropractor falsified his record to help the plaintiff." *Falsify*, Black's Law Dictionary (11th ed. 2019).

12

Guideline Acceptance, C.R. at 134; F.F. 4, C.R. at 179. Moreover, Hollabaugh testified that Claimant was aware of the rule regarding the falsification of documents, which was in Employer's guidelines, was addressed in training, and was also covered in a class on contracts that Claimant took several times. N.T. 12/30/19 at 8, C.R. at 116. In fact, Hollabaugh stated that Claimant completed an online training module covering contract writing, which specifically "addresse[d] whose names are to go on the contract." N.T. 12/30/19 at 9, C.R. at 117; *see also* F.F. 8, C.R. at 179. Although Claimant asserts that the record lacks "verifiable evidence as to the content of these modules" apart from Hollabaugh's testimony, "[i]t is not necessary that an employer's reasonable order or directive be written in order for the Court to determine that an employee's violation thereof constitutes willful misconduct[.]" *Graham*, 840 A.2d at 1057 (claimant committed willful misconduct by failing to relocate from Indiana to employer's site in Pennsylvania, where testimony provided by employer established that the relocation requirement was communicated to claimant at the time of hire and throughout his employment, even though the written employment agreement did not contain the requirement). Hollabaugh also attested that her administrator, who bore the responsibility of verifying the accuracy of contracts, "had gone over it with him several times." *Id.* Thus, the Board was entitled to find that Claimant was aware of Employer's policy prohibiting the falsification of documents, and it is not this Court's function to re-evaluate the Board's evidentiary determinations. *See Melomed v. Unemployment Comp. Bd. of Rev.*, 972 A.2d 593, 594-95 (Pa. Cmwlth. 2009) (holding that "[e]mployer met its burden of proving [c]laimant's awareness of [e]mployer's notarization policy," where claimant "[did] not dispute that [e]mployer provided her with an employee handbook when she was hired" and employer's district manager

13

testified that he "communicated and reiterated the company policy directly to [c]laimant"); *Cambria Cnty. Transit Auth.*

We also agree with the Board that Employer presented sufficient competent evidence to establish that Claimant violated its policy prohibiting the falsification of documents. *See* Referee's Decision at 3, C.R. at 180; Board's April 2020 Order at 1, C.R. at 252. Claimant testified that he signed Morrow's name to the contract. *See* N.T. 3/13/20 at 9, C.R. at 235. That admission in itself is sufficient to prove Claimant's violation of the policy.[11]

Claimant maintains that he did not violate Employer's policy because his conduct did not contravene the Crimes Code, the Uniform Commercial Code, or burial regulations. *See* Claimant's Br. at 17. However, Claimant has not preserved that argument, as he asserts it for the first time before this Court. Accordingly, it is waived. *See* Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a) (a "party may not raise upon appeal any other question not raised before the agency . . . unless allowed by the court upon due cause shown"); Pa.R.A.P. 1551(a) (with regard to review of quasi-judicial orders, "[n]o question shall be heard or considered by the court which was not raised before the government unit"); Pa.R.A.P. 2117(c) (the statement of the case shall confirm that issues were raised or preserved below, and shall include specific supporting references to the record); *see also Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 611 (Pa. Cmwlth. 2011) (issue was

---

[11] Claimant's discussion of whether his behavior rose to the level of criminal forgery misses the mark. *See* Claimant's Br. at 17. While the question of whether Claimant intended to defraud would be relevant and required to prove his mens rea for a conviction if Claimant were criminally prosecuted for forgery pursuant to Section 4101(a) of the Crimes Code, 18 Pa.C.S. § 4101(a), the same is not true in this instance. Claimaint's admission that he did, in fact, forge his co-worker's signature on a contract sufficiently illustrates violation of a written policy against falsifying documents, especially where the Board determined that the credible testimony revealed that there is never a situation where an employee would be permitted to sign on another employee's behalf. *See* Board's April 2020 Order, C.R. at 252.

14

"waived for purposes of appeal" and "[would] not be addressed for the first time by this Court" where claimant failed to raise the allegation before the referee or the Board).

Moreover, Claimant's assertion misconstrues the legal standard for willful misconduct in the UC context, which does not require fraudulent intent. *See Palm v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 708 C.D. 2013, filed Feb. 19, 2014),[12] slip op. at 11 (finding unpersuasive claimant's argument that his conduct did not satisfy every element of the torts of intentional misrepresentation or negligent misrepresentation, as "[a]n employer is not required to show that an employee's actions rose to the level of a tortious or criminal act in order to prove that the employee's violation of a work rule constituted willful misconduct"); *see also Schenck v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2317 C.D. 2011, filed July 27, 2012), slip op. at 6-8 (finding that claimant committed willful misconduct by forging a facility operator's signature on a document in violation of employer's policy prohibiting the forgery of an official document, even though claimant sought to correct a misnomer in the document and did not intend to harm employer).

Further, Claimant's belief that Morrow authorized him to sign her name to the contract does not preclude finding that Claimant deliberately violated Employer's policy. *See Palm*, slip op. at 7-11 ("[c]laimant's assumptions were more than minor mistakes caused by negligence but rather the type of intentional and deliberate acts that may serve as the basis for a finding of willful misconduct," where claimant "entered inaccurate information on key portions of the application based upon his own assumptions of the customer's information"). Claimant's assertion

---

[12] We cite this unreported opinion as persuasive authority pursuant to this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

that he rectified the discrepancy by obtaining Vanda's signature on a duplicate contract likewise does not preclude a finding that Claimant violated Employer's rule, which prohibited the falsification of documents without regard to whether the falsification was later rectified. *Accord Palm*, slip op. at 7 (affirming the Board's determination of willful misconduct based upon claimant's falsification of a customer's brokerage account application in violation of employer's policy, even though the customer noted the mistakes prior to signing the application).

Employer having established that Claimant committed willful misconduct by violating Employer's policy prohibiting the falsification of documents, the burden shifted to Claimant to demonstrate good cause for his noncompliance. *See Metro. Edison Co.*, 606 A.2d at 957-58. Claimant maintains he believed in good faith that Morrow's oral grant of permission to sign her name to the contract authorized his violation of Employer's policy. *See* Claimant's Br. at 19-21.

In support of this assertion, Claimant cites *Chester Community Charter School v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50 (Pa. Cmwlth. 2016), in which this Court held that a claimant's modification of employee time cards in violation of her employer's policy prohibiting the falsification of records did not amount to willful misconduct, where the claimant credibly testified that she misunderstood the policy as only prohibiting staff members from altering their own time cards. *Chester*, 138 A.3d at 52-56. However, the *Chester* claimant testified to her confusion regarding the requirements of the policy itself. *See id.* By contrast, here, Claimant does not assert that he misapprehended Employer's policy prohibiting the falsification of documents, but rather that his subordinate, Morrow, authorized him to sign on her behalf.

While acknowledging Claimant's assertion that Morrow gave him permission to sign her name to the contract, the Board nevertheless determined that "[E]mployer['s witness] credibly testified there is never a situation where you can sign on someone's behalf." Board's April 2020 Order at 1, C.R. at 252. Thus, the Board found Claimant failed to demonstrate that obtaining permission from Morrow prior to signing her name to the contract excused noncompliance with Employer's policy. *See id.* We agree.

We further note that Claimant's reliance on Morrow's authorization was particularly inappropriate because Claimant was a management employee and Morrow was his subordinate. *Accord Melomed*, 972 A.2d at 596 (claimant committed willful misconduct by violating employer's notarization policy, and "[c]ontrary instruction from a manager" did not constitute "a valid excuse, particularly . . . where a subordinate manager instruct[ed] another employee to lie to a superior manager"). We therefore agree with the Board and conclude that Claimant's proffered justification fails to rise to the level of extraordinary circumstances required to provide good cause for violation of Employer's reasonable work rule.

### III. Capricious Disregard

In a related argument, Claimant asserts that the Board failed to consider and, thus, capriciously disregarded testimony provided by him and by Vanda at the remand hearing, establishing that he "received express authority from [] Morrow to sign [her] name to the contract," and that he "believed he had permission to take this action[.]" Claimant's Br. at 30-33. We reject Claimant's argument.

"We have defined capricious disregard as the willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary

17

intelligence could not possibly have avoided in reaching a result." *Univ. of Pittsburgh v. Unemployment Comp. Bd. of Rev.*, 413 A.2d 51, 52 (Pa. Cmwlth. 1980) (internal citation and quotation marks omitted). "Disturbing an agency's adjudication for a capricious disregard of evidence is appropriate only where the factfinder has refused to resolve conflicts in the evidence, has not made essential credibility determinations or has completely ignored overwhelming evidence without comment." *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015). "An appellate court conducting a review for capricious disregard of material, competent evidence may not reweigh the evidence or make credibility determinations." *Id.* Our Supreme Court has noted that "where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 n.14 (Pa. 2002).

Here, while acknowledging Claimant's testimony that he obtained Morrow's permission prior to signing her name to the contract, the Board nevertheless determined that "[E]mployer['s witness] credibly testified there is never a situation where you can sign on someone's behalf." Board's April 2020 Order at 1, C.R. at 252. Thus, whether Morrow gave permission is ultimately irrelevant, as Employer's policy forbade that, too. Therefore, whether the Board considered Claimant's testimony in that regard is immaterial to the outcome of this case.

Moreover, the Board's opinion demonstrates that it did consider Claimant's testimony, but it rejected that testimony, as it was entitled to do. The

18

Board avers in its appellate brief that "[w]hile [it] did not mention Claimant's witness by name in its [o]rder, it considered Claimant's evidence in its entirety." Board's Br. at 18. Although the Board did not specifically discuss Vanda's testimony, it stated in its opinion that it "considered the testimony and evidence on the merits offered at the remand hearing." *Id.* The Board was not required to provide details of every piece of evidence it reviewed. *See Panella v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 351 C.D. 2013, filed Aug. 29, 2013), slip op. at 7-8 (quoting *Pistella v. Workmen's Comp. Appeal Bd. (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993)) ("The Board must make crucial findings on the essential issues but 'is not required to address specifically each bit of evidence offered.'"). Further, the Board asserts, and we agree, that Vanda "offered substantially similar cumulative testimony" to that of Claimant. Board's Br. at 18. We, therefore, conclude the Board did not capriciously disregard testimony offered at the March 2020 remand hearing.

## IV. Conclusion

Based on the foregoing discussion, we affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark D. Callahan,                          :
                    Petitioner             :
                                           :
        v.                                 :
                                           :
Unemployment Compensation                  :
Board of Review,                           :    No. 513 C.D. 2020
                    Respondent             :

O R D E R

AND NOW, this 8th day of March, 2021, the April 28, 2020 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge